1  LATHAM & WATKINS LLP
   Peter A. Wald (Bar No. 85705)
2    *peter.wald@lw.com*
   Gavin M. Masuda (Bar No. 260480)
3    *gavin.masuda@lw.com*
   Nicole C. Valco (Bar No. 258506)
4    *nicole.valco@lw.com*
   Eric Chen (Bar No. 287046)
5    *eric.chen@lw.com*
   505 Montgomery Street, Suite 2000
6  San Francisco, California 94111
   Telephone: (415) 391-0600
7  Facsimile:  (415) 395-8095

8  *Attorneys for Defendant Deloitte & Touche LLP*

9

   UNITED STATES DISTRICT COURT
10
   CENTRAL DISTRICT OF CALIFORNIA
11

12

13  LAWRENCE P. CIUFFITELLI, for      CASE NO. 2:19-mc-00034
    himself and as Trustee of
14  CIUFFITELLI REVOCABLE TRUST,
    *et al.*,                         **JOINT STIPULATION REGARDING
15                                     DEFENDANT DELOITTE &
                    Plaintiffs,        TOUCHE LLP'S MOTION TO
16          v.                         COMPEL NON-PARTY
                                       CLIFTONLARSONALLEN WEALTH
17  DELOITTE & TOUCHE LLP;             ADVISORS, LLC**
    EISNERAMPER LLP; SIDLEY
18  AUSTIN LLP; TONKON TORP LLP;
    TD AMERITRADE, INC.;              Judge:
19  INTEGRITY BANK & TRUST; and       Date:
    DUFF & PHELPS, LLC,               Time:
20                                     Place:
                    Defendants
21
    Underlying Case: *Ciuffitelli, et al. v.
22  Deloitte & Touche LLP, et al.* 3:16-cv-
    00580-AC (D. Or.)
23

24

25

26

27

28

# TABLE OF CONTENTS

Page

I.    INTRODUCTORY STATEMENTS ................................................................ 1

    A.    Deloitte's Introductory Statement................................................ 1

    B.    CliftonLarsonAllen Wealth Advisors' Introductory
        Statement........................................................................................ 4

II.   DELOITTE'S STATEMENT OF FACTS....................................................... 6

    A.    Plaintiffs' Claims Under the Oregon Securities Laws.......................... 6

    B.    Deloitte's Subpoena Duces Tecum And CLAWA's
        Responses........................................................................................ 8

    C.    CLAWA's Objections and Initial Production................................... 17

    D.    CLAWA's Failure to Comply With Its Agreement To
        Produce "Class Certification-Related Information" And
        Deloitte's Proposed Compromise, Which CLAWA
        Rejected........................................................................................ 18

III.  CLAWA'S STATEMENT OF FACTS ....................................................... 20

    A.    Procedural History of the Underlying Litigation,
        Including Plaintiff's Broad Definition of the Proposed
        "Class," Denial of Deloitte and other Defendants'
        Motions to Dismiss and Motions for Protective Orders or
        to Compel Production, and Deloitte's and Sidley's
        Pursuit of Claims for Contribution Against Third-Party
        Registered Investment Advisors................................................. 20

    B.    Non-party CLAWA's Receipt of and Good-Faith Efforts
        to Understand, Narrow, and Respond to Deloitte's Overly
        Broad and Improper Subpoena ................................................. 23

    C.    Non-party CLAWA's Timely Service of and Repeated
        Reiteration of Its Objections to Deloitte's Overly Broad
        and Improper Subpoena ................................................. 27

    D.    Deloitte's Misconstruction of The Scope of That Which
        CLAWA Agreed to Produce and CLAWA's Response in
        Good-Faith Agreeing to Engage in Further Review to
        Determine if It Possessed Additional Potentially Relevant
        Documents ................................................. 28

    E.    CLAWA's Good-Faith Efforts to Confer with Deloitte
        After Being Blindsided Upon Learning that Deloitte Was
        Pursuing Contribution Claims Against Other Third-Party

Registered Investment Advisors .........................................................29

F.  Deloitte's Initiation of Motion Practice Without A Meet and Confer, Continued Refusal to Stipulate to the Filing of this Matter in the District of Oregon and Insistence on Full Compliance with All Outstanding Document Requests, Reneging on Previous Negotiations .................................32

G.  CLAWA's Re-Assessment of the Burdens of *Full* Compliance with the Subpoena, Which Deloitte Through This Motion Now Seeks.........................................................33

IV.  DELOITTE'S POSITION..................................................................34

A.  The Subpoena Seeks Relevant Information And Is Reasonably Calculated To Lead To The Discovery Of Admissible Evidence ...................................................34

1.  The Requested Documents Are Relevant to Plaintiffs' Claims Of "Seller Liability" And "Nonseller Liability" .........................................35

2.  The Requested Documents Are Relevant To Class Certification ...................................................36

B.  CLAWA's Relevance Objection As To Requests 11-12 and 17-19 Is Meritless..............................................40

C.  CLAWA's Overbreadth Objection As To Requests 7-10, 12, And 15 Should Be Rejected.....................................41

V.  CLIFTONLARSONALLEN WEALTH ADVISORS' POSITION..................................................................41

A.  CLAWA Is A Non-Party To This Action And Has Already Produced Over 6,100 Pages Of Documents; Deloitte Has Failed To Meet Its Burden Under Rule 26 ..................41

B.  Deloitte Is Improperly Seeking Merits-Based Discovery Irrelevant to The Existing Claims in The Action And Prior To Class Certification ...........................................43

1.  The Oregon Court Wants to Avoid Merits-Related Rulings in Discovery Motio ns And Has Been Keeping A Tight Rein On Discovery Generally Prior To Class Certification .................................43

2.  Deloitte's Merits-Related Relevance Arguments Are Insufficient.............................................45

a.  Deloitte's Attempts to Connect CLAWA's Documents to Its Own Potential Liability Stretch Far Beyond the Bounds of Relevance or Proportionality.............................45

|  | b. | The Oregon Court Has Repeatedly Rejected Deloitte's Arguments That Reliance Is An Element Of The Oregon Securities Laws At Issue, Such That Deloitte's Proposed Discovery Concerning What CLAWA Investors Received And Relied Upon Is Improper To Any Issue Or Defense In The Case, Let Alone Class Certification ..............................47 |
|  | c. | The Documents CLAWA Has Already Produced Precluded CLAWA Investors From Relying Upon Any CLAWA Communications In Making Their Investment Decisions in Any Event ..............................47 |
|  | d. | Deloitte's Recent Confession That It Seeks Merits Discovery To Be Used For Purposes Including Possible Contribution Claims Against CLAWA Underscores Its Bad-Faith Negotiation Throughout The Subpoena Process And That It Does Not Have Adequate Grounds Proportional To The Needs Of The Case To Compel Compliance With The Remainder Of Its Requests ..........................50 |

C.   Deloitte's Relevance Arguments Based on Class Certification Issues Also Fail..............................................51

D.   Deloitte's Requests for Internal Documentation, Including Policies and Procedures And Diligence, Are Similarly Improper........................................................................53

E.   Deloitte's Defense Of Requests 7-10, 12, And 15 Is An Acknowledgment Of Their Overbreadth ..........................54

VI.   CONCLUSION ..........................................................................55

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
LOS ANGELES

JOINT STIPULATION RE DELOITTE & TOUCHE
LLP'S MOTION TO COMPEL

1  Pursuant to Federal Rule of Civil Procedure 45 and Local Rules 45 and 37-2,
2  Deloitte & Touche LLP ("Deloitte"), a defendant in the putative class action
3  captioned *Ciuffitelli, et al. v. Deloitte & Touche LLP, et al.*, No. 1:16-cv-00580-
4  AC, currently pending before the Honorable John V. Acosta in the U.S. District
5  Court for the District of Oregon (the "Oregon Class Action"), and non-party
6  CliftonLarsonAllen Wealth Advisors, LLC ("CliftonLarsonAllen Wealth
7  Advisors" or "CLAWA"), submit this Joint Stipulation Regarding Deloitte's
8  Motion to Compel CliftonLarsonAllen Wealth Advisors to comply with Deloitte's
9  Subpoena Duces Tecum (the "Subpoena").

10  The parties have been unable to resolve their dispute despite their meet-and-
11  confer efforts.  CLAWA's corporate agent for service of process, C T Corporation
12  System, is located in Los Angeles, California.  Accordingly, compliance with the
13  Subpoena is required in this judicial district and Deloitte is required to file its
14  Motion to Compel here.  *See* Fed. R. Civ. P. 45(d)(2)(B)(i).  As indicated below,
15  however, CLAWA consents to transfer of the matter pursuant to Federal Rule of
16  Civil Procedure 45(f) to the court in the District of Oregon where the underlying
17  action is pending (the "Oregon Court"), and asked Deloitte to stipulate that all
18  motions related to the Subpoena be filed in the Oregon Court in the first instance in
19  the interest of judicial efficiency.  Deloitte did not agree to CLAWA's request, and
20  to date, even though its consent is not required under Rule 45(f), nonetheless has
21  not agreed to CLAWA's request for transfer, which will be filed shortly in the
22  form of another joint stipulation pursuant to Local Rule 37.

23  **I.  INTRODUCTORY STATEMENTS**
24      **A.  Deloitte's Introductory Statement**

25
26  Deloitte respectfully moves the Court for an order compelling CLAWA to
27  produce all non-privileged documents responsive to Requests for Production
28  ("Requests" or "RFPs") Nos. 2-19 in Deloitte's Subpoena issued to CLAWA

1   pursuant to Rule 45.  The documents are critical to Deloitte's defenses that it is not

2   liable for materially aiding unlawful sales of securities under the Oregon Securities

3   Law, Oregon Revised Statute ("ORS") 59.115, and to class certification issues in

4   the Oregon Class Action.

5        CLAWA is a registered investment adviser ("RIA") based in Minneapolis,

6   Minnesota with offices in many other states, including California.  CLAWA

7   provides comprehensive wealth advisory services to high net worth individuals.

8   Certain CLAWA clients purchased securities from Oregon-based Aequitas

9   Commercial Finance, LLC and its related entities, including Aequitas Capital

10  Opportunities Fund, LP ("ACOF") (collectively, "Aequitas").  In the Oregon Class

11  Action, the Plaintiffs bring claims on behalf of a putative class of "all persons who

12  purchased Aequitas securities on or after June 9, 2010."  *See* Declaration of Gavin

13  M. Masuda in Support of Joint Stipulation ("Masuda Decl.") Ex. 1 ¶ 203.

14  Plaintiffs allege that Aequitas sold these securities by means of false or misleading

15  statements, and that Deloitte materially aided the unlawful sales because it was

16  identified to potential investors as Aequitas's auditor.  Masuda Decl. Ex. 1

17  ¶ 214- 216.  Deloitte maintains that it did not "materially aid" any sales of

18  Aequitas securities.

19       By contrast, RIAs such as CLAWA played a critical role in Aequitas's

20  allegedly unlawful sales because they performed diligence on the Aequitas

21  securities and recommended them to their clients.  CLAWA, for example,

22  recommended over $16 million in Aequitas securities to its clients, which its

23  clients then purchased.  What CLAWA knew about Aequitas—which, of course,

24  informed what it told its clients—is highly relevant both to whether the securities

25  were sold by means of false or misleading statements and whether Deloitte in fact

26  materially aided any sale.  This information also is relevant for an independent

27  reason:  what CLAWA learned about Aequitas, and what CLAWA told its clients

28  about the investment (including whether and the extent to which it referred to

1   Deloitte), bear directly on the issue of whether common questions of law or fact

2   predominate over questions affecting only individual class members in the Oregon

3   Class Action.  Plaintiffs intend to file their motion for class certification under

4   Rule 23 on April 26, 2019.  Discovery of CLAWA's documents therefore is

5   critical to rapidly approaching events in the Oregon Class Action.

6          Anticipating the need for CLAWA's information in advance of class-

7   certification briefing, Deloitte served CLAWA with a subpoena on August 23,

8   2018, over six months ago.  Although CLAWA recommended millions of dollars

9   of Aequitas securities to putative class members, CLAWA produced only 119

10  documents in response to Deloitte's Subpoena.  Deloitte conferred repeatedly with

11  CLAWA regarding the insufficiency of its document production and resolved most

12  of CLAWA's initially asserted objections, including those on grounds of relevance

13  and confidentiality.  Further, Deloitte attempted to alleviate any potential burden

14  by offering to limit its document requests to a subset of twelve CLAWA clients

15  who invested in Aequitas.  CLAWA initially agreed to produce relevant documents

16  from these twelve clients, but then reversed course.  It now refuses to supplement

17  its production with the documents it concedes are responsive (including critical

18  email communications with its clients regarding Aequitas), simply because it is

19  concerned that Deloitte may seek contribution from CLAWA if Deloitte is found

20  liable in the Oregon Class Action.  This is not a valid reason to refuse to produce

21  relevant documents in response to a subpoena—and in any event, as Deloitte

22  informed CLAWA, because no class has been certified in the Oregon Class Action

23  and no CLAWA client has brought an individual claim against Deloitte, Deloitte

24  currently has no basis for asserting a contribution claim against CLAWA.

25  Accordingly, Deloitte respectfully requests this Court order CLAWA to produce

26  all non-privileged documents responsive to Request Nos. 2-19 in Deloitte's

27  Subpoena (the "Requested Documents").

28

1    **B.      CliftonLarsonAllen Wealth Advisors' Introductory Statement**

2         As a threshold matter, CLAWA believes that this motion should be heard by

3    the court in which the underlying action is pending.  The Oregon Court has ruled

4    on numerous discovery motions in the case over the past three years, and

5    consequently is well acquainted with the matters raised in Deloitte's motion.

6    These facts are undeniable, and CLAWA so informed Deloitte following receipt of

7    Deloitte's portion of this joint stipulation.  During the meet and confer process,

8    CLAWA further referenced its consent to such a transfer pursuant to Fed. R. Civ.

9    P. 45(f), which this Court may grant as a matter of right.  To that end, CLAWA

10   asked Deloitte to agree to stipulate to having any motions related to the Subpoena

11   be filed and heard in the Oregon Court, to avoid the necessity of having an entirely

12   separate action, and then a motion to transfer, filed in this Court, especially given

13   Deloitte's stated desire for expediency.  Deloitte refused, providing no reason for

14   its refusal other than a generalized concern about "delay."  This is all the more

15   confusing considering Deloitte's refusal will only serve to postpone a decision on

16   the matter further (and increase the burden on this Court), as CLAWA must now

17   begin the Local Rule 37-1 joint stipulation process for its motion to transfer.

18   Indeed, when confronted with this fact, Deloitte had no further explanation for its

19   insistence on proceeding in this District.  Had Deloitte agreed to CLAWA's

20   stipulation, which CLAWA offered to draft and submit in short order, Deloitte

21   could potentially have *already* had its motion to compel on file in the issuing court.

22   Under the circumstances, however, CLAWA requests – to preserve at least some

23   judicial efficiency – that the Court hear Deloitte's motion to compel and

24   CLAWA's transfer motion at the same time, if it does not render a prior decision

25   on the transfer motion without a hearing.

26         As to the merits of the instant motion, non-party CLAWA has acted in good

27   faith to negotiate a reasonable response to Deloitte's overly broad Subpoena.

28   Notably, CLAWA, after conducting an internal review, produced a substantial

1   volume of data to Deloitte in response to multiple requests in the Subpoena.  The

2   data CLAWA has provided – totaling in excess of 6,100 pages and relating to each

3   of its 33 clients who invested in Aequitas – includes copies of offering and sales

4   materials that CLAWA received from Aequitas and/or that it self-generated for

5   purposes of providing information to its clients about the Aequitas security those

6   clients invested in, the Aequitas Capital Opportunities Fund ("ACOF"); the PPMs

7   each client received; the subscription documentation each client executed; and a

8   table created solely for purposes of assisting Deloitte of all of CLAWA's investors

9   who invested in ACOF, which summarizes the amount and dates of each client's

10   investment(s).  In sum, CLAWA produced and Deloitte received exactly what

11   Deloitte said that it needed for purposes of class certification – what CLAWA

12   clients received and relied upon in making their own investment decisions related

13   to ACOF, as was their responsibility as non-discretionary clients of CLAWA.

14        Despite CLAWA's efforts to provide Deloitte with documents that identify

15   all of its clients who invested in ACOF and ample documentation of the offering

16   and sales materials CLAWA provided to those clients about ACOF, nonetheless

17   Deloitte insatiably continues to demand the production of additional documents

18   from CLAWA, who is not currently, and never was, an accountant, auditor, or

19   other service provider for Aequitas.  Deloitte's ongoing demands for documents

20   thus mystify CLAWA, which has worked in good faith to respond to the Subpoena

21   requests (or parts thereof) which are relevant and proportional to the issues before

22   the Oregon Court in the underlying litigation in the context of a non-party.

23        Deloitte's persistence on saddling CLAWA with the obligation to produce

24   additional materials, including documents Deloitte could otherwise obtain from

25   representative class members, is not only disproportionate to the needs of the case

26   – it far exceeds the scope of what is even relevant to class certification.  As

27   Deloitte's representations and arguments necessarily concede, its motion to compel

28   appears designed to 1) complicate and potentially delay the underlying litigation

1  with demands for third-party documents not germane to the class certification

2  issues as alleged, and 2) obtain premature merits-based discovery regarding claims

3  that do not yet exist in the case.

4  CLAWA simply does not see the relevance or the proportionality of the

5  information Deloitte continues to demand at this stage of the underlying litigation.

6  CLAWA further notes that Judge Acosta has seen fit to limit overbroad discovery

7  sought from *parties* on multiple occasions, and there is no reason to believe he

8  would not apply the proportionality standards even more stringently to discovery

9  sought from non-parties.  *See*, *e.g.*, Dkt. No. 174 (November 28, 2016 Opinion and

10  Order of the Oregon Court on Deloitte and EisnerAmper LLP's Motions for

11  Protective Order) ("Delaying discovery or limiting its scope until [certain] issues

12  are decided is appropriate and implements the 2015 Amendment's mandate for a

13  renewed consideration of the time and money litigants must expend on

14  discovery."), attached to Seymore Declaration as Ex. 1.

15  Accordingly, and for the reasons set forth herein, CLAWA respectfully

16  requests that the Court deny Deloitte's request to compel any further discovery

17  from non-party CLAWA.

18  **II.    DELOITTE'S STATEMENT OF FACTS**

19      **A.    Plaintiffs' Claims Under the Oregon Securities Laws**

20  Aequitas is the subject of seven securities lawsuits pending in Oregon state

21  and federal courts.  The Oregon Class Action is a putative class action filed in the

22  District of Oregon on behalf of "all persons who purchased Aequitas securities on

23  or after June 9, 2010."  *See* Masuda Decl. Ex. 1 ¶ 203.  Plaintiffs claim that

24  Aequitas sold investments by means of untrue statements of material fact or

25  misleading omissions under ORS 59.115(1)(b).  *Id.* ¶ 215.

26  Although Plaintiffs allege that Aequitas is primarily liable as a seller of

27

28

1  securities under the Oregon Securities Law, Aequitas is not named as a defendant.[1]

2  Instead, Plaintiffs have sued several professional service providers for the various

3  Aequitas companies, including lawyers, consultants, and accountants.  Deloitte is

4  an accounting firm that provided auditing services to some of the Aequitas-

5  affiliated companies for the fiscal years ended December 31, 2013 and December

6  31, 2014.  *Id.* ¶ 16.

7         Plaintiffs' claims against Deloitte rely on a provision of the Oregon

8  Securities Law that imposes secondary or "nonseller" securities liability upon

9  "every person who participates or materially aids in a sale" of securities in which

10 the seller is liable.  ORS 59.115(3); Masuda Decl. Ex. 1 ¶ 216.  A nonseller who

11 participated or materially aided the sale of a security is liable "to the same extent as

12 the seller."  ORS 59.115(3).  To establish nonseller liability against a professional

13 service provider, Oregon law does not require a plaintiff to prove the service

14 provider knew about the conduct that made the sale unlawful.  *See Prince v.*

15 *Brydon*, 307 Or. 146, 149 (1988).

16        In short, the Oregon Securities Law places Deloitte in the position of having

17 to defend *both* the investors' *seller* liability allegations against Aequitas for

18 misrepresentations and omissions *and* against the investors' *nonseller* liability

19 allegations that Deloitte "participate[d] or materially aid[ed]" the sales of securities

20 to Plaintiffs.  To defend these claims, Deloitte needs to discover the circumstances

21 under which investors determined to invest and the "importance of [the

22 nonseller's] personal contribution to the transaction."  *Prince*, 307 Or. at 149.

23 Deloitte also seeks discovery to assess whether the Aequitas sales process was

24 consistent across investors—or whether it was highly individualized and therefore

25 inappropriate for class treatment in the Oregon Class Action.

26

27 [1] The Aequitas-affiliated companies are currently subject to a receivership
   proceeding in the U.S. District Court for the District of Oregon initiated by the
   U.S. Securities and Exchange Commission.  *See Sec. & Exch. Comm'n v. Aequitas*
28 *Mgmt., LLC*, No. 3:16-CV-00438-PK (D. Or.).  As a result, no claims may be
   brought against the Aequitas entities at this time.

This is where CLAWA's documents come into play.  Plaintiffs allege that Aequitas used a network of RIAs to sell the various securities at issue.  Masuda Decl. Ex. 1 ¶ 79.  According to plaintiffs, Aequitas paid RIAs to promote its securities and steer clients to invest.  Among other things, RIAs were obligated to understand their clients' risk tolerances and investment objectives, perform due diligence on investments before recommending them, and ensure the investments were suitable to their clients' needs.  *See SEC v. Capital Gains Research Bureau*, 375 U.S. 180, 191-92 (1963) (describing duties of RIAs).

CLAWA is not named in the Complaint, but recommended more than $16 million in Aequitas securities and was subject to the professional obligations described above.  Deloitte seeks documents relating to the actions CLAWA took to promote or recommend Aequitas securities to the putative class, including CLAWA's incentives to do so, whether Deloitte's audits or the audited financial statements were discussed with investors prior to their investments and, if so, what information the investors received about the audits or audited financial statements prior to their investments.

**B.    Deloitte's Subpoena Duces Tecum And CLAWA's Responses**

On August 23, 2018, Deloitte served a subpoena duces tecum on CLAWA in the Oregon Class Action pursuant to Rule 45.  The subpoena requested production of the following categories of documents:

- The identities of CLAWA's clients that invested in Aequitas and the material terms of their transactions (RFP Nos. 1 and 2);

- Documents relating to CLAWA clients who invested in Aequitas, including documents relating to their Aequitas transactions and investment files maintained by CLAWA (RFP Nos. 3 and 13);

- Documents relating to offering and sale materials for Aequitas securities, prepared either by Aequitas or by CLAWA (RFP Nos. 4 and 5);

- Other Aequitas-related documents and communications received by CLAWA (RFP Nos. 7, 8, 9 and 15);

- Documents relating to CLAWA's due diligence and review of its clients' Aequitas transactions (RFP Nos. 6 and 12);

- Documents relating to CLAWA's business practices with respect to its Aequitas-investor clients, including agreements with any plaintiff, agreements with Aequitas, benefits received in connection with any Aequitas investment, and documents relating to policies and procedures designed to comply with the Investment Advisers Act of 1940 (RFP Nos. 10, 11, 14 and 17);

- Documents that mention or identify the auditors of any Aequitas entity or that refer to any services Deloitte provided to any Aequitas entity (RFP No. 16); and

- Documents produced to or deposition testimony provided to federal regulators relating to Aequitas (RFP Nos. 18 and 19).

Deloitte and CLAWA were unable to resolve 18 of the 19 document requests (RFP Nos. 2-19). These document requests, and CLAWA's responses, are set forth in their entirety below, pursuant to Local Rule 37-2.1:

2. Documents sufficient to identify all Transactions by Your Clients in any Aequitas Security and the Material Terms of each Transaction. The time period limitation contained in Instruction No. 1 does not apply to this Request.

RESPONSE: Subject to General Objections 1-4, 6, and 9-10, CLA will produce a table identifying its investors and the core terms of each investor's transaction(s) related to Aequitas Securities that CLA recommended to its clients. CLA will also produce documents sufficient to identify: 1) CLA's clients who invested in Aequitas Securities recommended by CLA; 2) the terms and conditions of those investments; 3) what information was provided to CLA (by Aequitas) about the Aequitas Securities it recommended; and 4) what information was conveyed by CLA to its clients about the Aequitas Securities it recommended (the "Class Certification-Related Information"). This response is being framed and qualified based on the discussions and emails between counsel for CLA and

Deloitte occurring between September 19 and 24, 2018, during which counsel for Deloitte expressed that Deloitte's primary intent was to seek documents to assist it in defeating class certification. CLA believes that purpose will be addressed through CLA's production of the above-noted documents. To the extent Deloitte disagrees and continues to seek documents in response to this request (as initially drafted), CLA otherwise objects that the request is unduly burdensome, overly broad, and unreasonable. CLA further objects to the lack of any time period limitation applicable to the request.

     3.  All Documents Relating to any Transaction by Your Clients with any Aequitas Entity or in any Aequitas Security, including without limitation any Documents You prepared, reviewed, signed, or executed on behalf of Your Clients. The time period limitation contained in Instruction No. 1 does not apply to this Request.

     <u>RESPONSE</u>: Subject to General Objections 1-6 and 9-10, CLA will produce a table identifying its investors and the core terms of each investor's transaction(s) related to Aequitas Securities that CLA recommended to its clients and the Class Certification-Related Information. This response is being framed and qualified based on the discussions and emails between counsel for CLA and Deloitte occurring between September 19 and 24, 2018, during which counsel for Deloitte expressed that Deloitte's primary intent was to seek documents to assist it in defeating class certification. CLA believes that purpose will be addressed through CLA's production of the above-noted documents. To the extent Deloitte disagrees and continues to seek documents in response to this request (as initially drafted), CLA otherwise objects that the request is duplicative, unduly burdensome, overly broad, and unreasonable. CLA further objects to the lack of any time period limitation applicable to the request.

     4.  All Offering and Sale Materials You received from any Aequitas Entity, including without limitation Offering and Sale Materials that You received in connection with any Transaction by Your Clients or any referrals to any Aequitas Entity.

     <u>RESPONSE</u>: Subject to General Objections 1-5, and 8-10, CLA will produce the Class Certification-Related Information. This response is being framed and qualified based on the discussions and emails between counsel for CLA and Deloitte occurring between September 19 and 24, 2018, during which counsel for Deloitte expressed that Deloitte's primary intent was to seek documents to assist it in defeating class certification. CLA believes that purpose will be addressed through CLA's production of the Class Certification-Related Information and

noted table being produced in response to Requests Nos. 1-3. To the extent Deloitte disagrees and continues to seek documents in response to this request (as initially drafted), CLA otherwise objects that the request is duplicative, unduly burdensome, overly broad, and unreasonable.

5.  All Offering and Sale Materials You prepared for any of Your Clients Relating to any Aequitas Entity or Aequitas Security, including Offering and Sale Materials that You prepared in connection with any Transaction by Your Clients.

RESPONSE: Subject to General Objections 1-5, and 8-10, CLA will produce the Class Certification-Related Information. This response is being framed and qualified based on the discussions and emails between counsel for CLA and Deloitte occurring between September 19 and 24, 2018, during which counsel for Deloitte expressed that Deloitte's primary intent was to seek documents to assist it in defeating class certification. CLA believes that purpose will be addressed through CLA's production of the Class Certification Related-Information and noted table being produced in response to Requests Nos. 1-3. To the extent Deloitte disagrees and continues to seek documents in response to this request (as initially drafted), CLA otherwise objects that the request is duplicative, unduly burdensome, overly broad, and unreasonable.

6.  All Documents Relating to the review, modification, and approval of any Transaction by Your Clients prepared by Your compliance department or compliance officer, including any analyses You conducted in which any Aequitas Security was deemed unsuitable or inappropriate for any of Your Clients.

RESPONSE: Subject to General Objections 1-4, 6, and 9-10, CLA will produce the Class Certification-Related Information. This response is being framed and qualified based on the discussions and emails between counsel for CLA and Deloitte occurring between September 19 and 24, 2018, during which counsel for Deloitte expressed that Deloitte's primary intent was to seek documents to assist it in defeating class certification. CLA believes that purpose will be addressed through CLA's production of the Class Certification Related-Information and noted table being produced in response to Requests Nos. 1-3. To the extent Deloitte disagrees and continues to seek documents in response to this request (as initially drafted), CLA otherwise objects that the request is duplicative, unduly burdensome, overly broad, and unreasonable.

7.  All Communications between You and any Aequitas Entity, Broker-Dealer, Investment Adviser, or any other Person Relating to any Aequitas Security

or Aequitas Entity, including without limitation any Communications that informed any services or advice You offered or any referrals You made.

RESPONSE: Subject to General Objections 1-6, and 9-10, CLA will produce the Class Certification-Related Information. This response is being framed and qualified based on the discussions and emails between counsel for CLA and Deloitte occurring between September 19 and 24, 2018, during which counsel for Deloitte expressed that Deloitte's primary intent was to seek documents to assist it in defeating class certification. CLA believes that purpose will be addressed through CLA's production of the Class Certification Related-Information and noted table being produced in response to Requests Nos. 1-3. To the extent Deloitte disagrees and continues to seek documents in response to this request (as initially drafted), CLA otherwise objects that the request is duplicative, unduly burdensome, overly broad, and unreasonable.

8.  All Documents and Communications Relating to any meetings, presentations, conferences, trainings, dinners, or other events Relating to any Aequitas Entity, or hosted by, or on behalf of, any Aequitas Entity that You attended in person, telephonically, electronically, or otherwise, including gift & entertainment logs, travel & entertainment reviews, and approvals.

RESPONSE: Subject to General Objections 1-5, and 9-10, CLA will produce the Class Certification-Related Information. This response is being framed and qualified based on the discussions and emails between counsel for CLA and Deloitte occurring between September 19 and 24, 2018, during which counsel for Deloitte expressed that Deloitte's primary intent was to seek documents to assist it in defeating class certification. CLA believes that purpose will be addressed through CLA's production of the Class Certification Related-Information and noted table being produced in response to Requests Nos. 1-3. To the extent Deloitte disagrees and continues to seek documents in response to this request (as initially drafted), CLA otherwise objects that the request is duplicative, unduly burdensome, overly broad, and unreasonable.

9.  All Communications between You and any Client Relating to any Aequitas Security or Aequitas Entity.

RESPONSE: Subject to General Objections 1-6, and 9-10, CLA will produce the Class Certification-Related Information. This response is being framed and qualified based on the discussions and emails between counsel for CLA and Deloitte occurring between September 19 and 24, 2018, during which counsel for Deloitte expressed that Deloitte's primary intent was to seek documents to assist it

in defeating class certification. CLA believes that purpose will be addressed through CLA's production of the Class Certification Related-Information and noted table being produced in response to Requests Nos. 1-3. To the extent Deloitte disagrees and continues to seek documents in response to this request (as initially drafted), CLA otherwise objects that the request is duplicative, unduly burdensome, overly broad, and unreasonable.

10. All agreements between You and any Client, including without limitation any Documents any Clients reviewed or signed, Relating to any services You offered or provided (e.g., disclosures, waivers, acknowledgements).

RESPONSE: Subject to General Objections 1-4, and 9-10, CLA will produce the Class Certification-Related Information. This response is being framed and qualified based on the discussions and emails between counsel for CLA and Deloitte occurring between September 19 and 24, 2018, during which counsel for Deloitte expressed that Deloitte's primary intent was to seek documents to assist it in defeating class certification. CLA believes that purpose will be addressed through CLA's production of the Class Certification Related-Information and noted table being produced in response to Requests Nos. 1-3. To the extent Deloitte disagrees and continues to seek documents in response to this request (as initially drafted), CLA otherwise objects that the request is duplicative, unduly burdensome, overly broad, and unreasonable.

11. All Documents Relating to Your policies and procedures designed to comply with the Investment Advisers Act of 1940 ("Advisers Act"), including without limitation any policies and procedures addressing Your fiduciary and regulatory obligations under the Advisers Act, such as client on-boarding documentation for Your Clients who invested in any Aequitas Security, subscription agreements submitted by Your Clients who invested in any Aequitas Security, Your code of ethics, code of conduct, monitoring and surveillance testing, compliance manuals, supervisory and operational procedures, results of annual compliance reviews under Advisers Act Rule 206(4)-7, and results of any mock audits or periodic testing.

RESPONSE: Incorporating General Objections 1-4, 6, and 9-10, CLA objects that the request is overly broad and unreasonable because it seeks information not in any way specific to the Aequitas Entities, Aequitas Securities, or CLA's clients who invested in the Aequitas Entities or Securities CLA recommended, nor does it bear any relevance to any claim or defense asserted by any party in the underlying litigation, or appear to be in furtherance of the issues in dispute in the litigation or at this stage of the proceedings.

12.  All Documents Relating to Your due diligence of Your Clients' investments in any Aequitas Security or Aequitas Entity, including without limitation any asset analyses performed, new product committee charters and minutes, investment committee charters and minutes, executive committee charters and minutes, operating committee charters and minutes, investment management and allocation agreements, pre- and post-trade internal reviews, and Documents Relating to the outcome of such reviews.

RESPONSE: Incorporating General Objections 1-6, and 9-10, CLA objects that the request is overly broad and unreasonable because it seeks information not in any way specific to the Aequitas Entities, Aequitas Securities, or CLA's clients who invested in the Aequitas Entities or Securities CLA recommended, nor does it bear any relevance to any claim or defense asserted by any party in the underlying litigation, or appear to be in furtherance of the issues in dispute in the litigation or at this stage of the proceedings.

13.  All Documents Relating to the investment files of Your Clients who invested in any Aequitas Security or Aequitas Entity, including without limitation Your Client's demographic information, financial profile, investment strategy, asset allocation, net worth, and investment restrictions, as well as any advisory client agreements.

RESPONSE: Subject to General Objections 1-6, and 9-10, CLA will produce the Class Certification-Related Information. This response is being framed and qualified based on the discussions and emails between counsel for CLA and Deloitte occurring between September 19 and 24, 2018, during which counsel for Deloitte expressed that Deloitte's primary intent was to seek documents to assist it in defeating class certification. CLA believes that purpose will be addressed through CLA's production of the Class Certification Related-Information and noted table being produced in response to Requests Nos. 1-3. To the extent Deloitte disagrees and continues to seek documents in response to this request (as initially drafted), CLA otherwise objects that the request is overly broad and unreasonable because it seeks information about CLA's clients not specific to their investments in the Aequitas Entities or Aequitas Securities that CLA recommended, nor does it bear any relevance to any claim or defense asserted by any party in the underlying litigation, or appear to be in furtherance of the issues in dispute in the litigation or at this stage of the proceeding.

14.  All agreements between You and any Aequitas Entity, Broker-Dealer, Investment Adviser, or any other Person Relating to any Aequitas Entity or

Aequitas Security, including without limitation any referral agreements, selling agreements, and all Documents and Communications Relating to such agreements.

RESPONSE: Subject to General Objections 1-6, and 9-10, CLA will produce the Class Certification-Related Information. This response is being framed and qualified based on the discussions and emails between counsel for CLA and Deloitte occurring between September 19 and 24, 2018, during which counsel for Deloitte expressed that Deloitte's primary intent was to seek documents to assist it in defeating class certification. CLA believes that purpose will be addressed through CLA's production of the Class Certification Related-Information and noted table being produced in response to Requests Nos. 1-3. To the extent Deloitte disagrees and continues to seek documents in response to this request (as initially drafted), CLA otherwise objects that the request is duplicative, unduly burdensome, overly broad, and unreasonable.

15. All Documents or Communications You received or reviewed Relating to any Aequitas Entity or any Aequitas Security, including without limitation audited and unaudited financial statements, any Documents referring to any audited and unaudited financial statements, or any Documents Relating to the financial condition of any Aequitas Entity.

RESPONSE: Subject to General Objections 1-6, and 9-10, CLA will produce the Class Certification-Related Information. This response is being framed and qualified based on the discussions and emails between counsel for CLA and Deloitte occurring between September 19 and 24, 2018, during which counsel for Deloitte expressed that Deloitte's primary intent was to seek documents to assist it in defeating class certification. CLA believes that purpose will be addressed through CLA's production of the Class Certification Related-Information and noted table being produced in response to Requests Nos. 1-3. To the extent Deloitte disagrees and continues to seek documents in response to this request (as initially drafted), CLA otherwise objects that the request is duplicative, unduly burdensome and overly broad and unreasonable.

16. All Documents or Communications You received or reviewed that mention or identify the auditors of any Aequitas Entity or that refer to any services Deloitte provided to any Aequitas Entity or for any Aequitas Security.

RESPONSE: Subject to General Objections 1-6, and 9-10, CLA will produce the Class Certification-Related Information. This response is being framed and qualified based on the discussions and emails between counsel for CLA and Deloitte occurring between September 19 and 24, 2018, during which counsel for

Deloitte expressed that Deloitte's primary intent was to seek documents to assist it in defeating class certification. CLA believes that purpose will be addressed through CLA's production of the Class Certification Related-Information and noted table being produced in response to Requests Nos. 1-3. To the extent Deloitte disagrees and continues to seek documents in response to this request (as initially drafted), CLA otherwise objects that the request is duplicative, unduly burdensome and overly broad and unreasonable.

17.  All Documents and Communications Relating to any compensation or Benefits You were offered or You received in connection with any Transaction of Aequitas Securities or with any Aequitas Entity.  Such Documents include those sufficient to identify the amount of any compensation or Benefit You received.

RESPONSE: Incorporating General Objections 1-6, and 9-10, CLA objects that the request is overly broad and unreasonable because it seeks information not in any way specific to CLA's clients who invested in the Aequitas Entities or Securities that CLA recommended, nor does it bear any relevance to any claim or defense asserted by any party in the underlying litigation, or appear to be in furtherance of the issues in dispute in the litigation or at this stage of the proceedings.

18.  All Documents You sent to or received from the Securities and Exchange Commission, the Consumer Financial Protection Bureau, the Department of Justice, or any other federal or state regulatory or law enforcement agency, Relating to any Aequitas Entity or any Aequitas Security, and any Communications between You and any such agency.

RESPONSE: Incorporating General Objections 1-6, and 9-10, CLA objects that the request is overly broad and unreasonable because it seeks information not in any way specific to CLA's clients who invested in the Aequitas Entities or Securities that CLA recommended, nor does it bear any relevance to any claim or defense asserted by any party in the underlying litigation, or appear to be in furtherance of the issues in dispute in the litigation or at this stage of the proceedings.

19.  All deposition transcripts of any Persons currently or formerly employed by You deposed in any lawsuit, matter, proceeding, examination, or investigation Relating to any Aequitas Entity or any Aequitas Security, including those before any government or regulatory agency, including but not limited to the U.S. Securities and Exchange Commission and/or Financial Industry Regulatory Authority.

RESPONSE: Incorporating General Objections 1-6, and 9-10, CLA objects that the request is overly broad and unreasonable because it seeks information not in any way specific to CLA's clients who invested in the Aequitas Entities or Securities that CLA recommended, nor does it bear any relevance to any claim or defense asserted by any party in the underlying litigation, or appear to be in furtherance of the issues in dispute in the litigation or at this stage of the proceedings.

## C.   CLAWA's Objections and Initial Production

Deloitte conferred with CLAWA on September 19, 2018, and agreed to extend CLAWA's deadline for responding to the Subpoena.  During the conferral, Deloitte explained the relevance of the documents it sought, including for the purpose of assessing class certification.  CLAWA stated that it was amenable to producing "Class Certification-Related Information" "narrowed to relate only to those Aequitas Securities CLA recommended."  Masuda Decl. Ex. 2 at 8. CLAWA defined "Class Certification-Related Information" as "1) CLA's clients who invested in Aequitas Securities recommended by CLA; 2) the terms and conditions of those investments; 3) *what information was provided to CLA (by Aequitas)* about the Aequitas Securities it recommended; and 4) *what information was conveyed by CLA to its clients* about the Aequitas Securities it recommended." *Id.* (emphasis added).  Deloitte agreed, stating that it looked forward to CLAWA's initial production of "Class Certification-Related Information" by October 12, 2018.  Masuda Decl. Ex. 2 at 6.

On October 2, 2018, CLAWA provided a "table of the investors and key material terms of those investors' investments in Aequitas securities recommended by CLA, for the purpose of hopefully identifying a subset of individuals as to whom Deloitte would limits its other requests." *Id.*  On October 12, 2018, CLAWA produced 118 documents, in addition to serving its formal responses and objections to the Subpoena.  Masuda Decl. Ex. 2 at 5.  In response to Request Nos. 1-10, and 13-16, CLAWA stated that subject to its general objections, "CLA will produce the Class Certification-Related Information." *See supra* at Section II.B.

However, in response to Request Nos. 11-12, and 17-19, CLAWA objected to producing responsive documents because they "seek[] information not in any way specific to CLA's clients who invested in the Aequitas Entities or Securities that CLA recommended, nor does it bear any relevance to any claim or defense asserted by any party in the underlying litigation." *Id.*

### D.   CLAWA's Failure to Comply With Its Agreement To Produce "Class Certification-Related Information" And Deloitte's Proposed Compromise, Which CLAWA Rejected

Deloitte reviewed the 119 documents CLAWA produced, which included several Aequitas offering and sales documents regarding ACOF and approximately forty ACOF, LP Private Investment Fund Acknowledgement Forms for CLAWA clients.  On a November 1, 2018 conferral call, Deloitte informed CLAWA that its initial production did not include all "Class Certification-Related Information" that CLAWA had agreed to produce.  Deloitte noted that while CLAWA had produced *some* documents responsive to Requests 2, 4, and 5 (documents relating to CLAWA clients' Aequitas transactions, and Aequitas offering and sales materials), Deloitte asked CLAWA to confirm that it had in fact produced all documents responsive to these Requests.  Masuda Decl. Ex. 2 at 4-5.  Deloitte also noted that CLAWA had not produced any documents responsive to parts (3) and (4) of CLAWA's defined "Class Certification-Related Information," including but not limited to, email communications from Aequitas to CLAWA about the Aequitas Securities it recommended, and email communications from CLAWA to its clients about those Aequitas Securities.  *Id.*

To further ease any potential production burden, on November 8, 2018, Deloitte proposed to limit its document requests involving CLAWA's clients to a subset of twelve of the over forty CLAWA clients who purchased Aequitas Securities, while reserving its rights to later seek documents responsive to the remainder.  *See id.*  The following day, CLAWA stated that it would "continue its efforts to provide Class Certification-Related Information . . . in response to the

subpoena."  Masuda Decl. Ex. 2 at 4.  More than three months have passed, and CLAWA has not produced any additional documents.  According to CLAWA, it did not start reviewing documents in response to Deloitte's proposal until December 19, 2018.  Masuda Ex. 2 at 2.  On January 2, 2019, CLAWA stated it "[m]ore than likely [] will make a rolling production of email hopefully beginning end of next week."  Masuda Decl. Ex. 2 at 1.  That never happened.

Instead, on January 11, 2019, CLAWA voiced concern that Deloitte had filed a third-party complaint for contribution against two RIAs and a broker-dealer that advised the lead plaintiffs in the Oregon Class Action.  *See id.*  On January 17, 2019, Deloitte informed CLAWA again that the Requested Documents were relevant to class certification and that fear of a future hypothetical lawsuit is not a valid basis to withhold relevant documents.  In addition, Deloitte also informed CLAWA that it had no present basis for asserting third-party contribution claims against CLAWA because the lead plaintiffs were not CLAWA clients, no class has been certified, and no CLAWA client has asserted individual claims against Deloitte.  Rather, Deloitte reiterated that CLAWA's documents are relevant to the claims and defenses in the Oregon Class Action, and to class certification.  In the ensuing weeks, Deloitte repeatedly followed up with CLAWA to ascertain when CLAWA would produce the "Class Certification-Related Information" it previously agreed to produce.  CLAWA stalled for over a month, cancelling follow-up calls over the next several weeks and refusing to provide any definitive response regarding when it would make its supplemental production.  Masuda Decl. Ex. 3 at 2-5.

Given CLAWA's delays and the looming class-certification briefing in the Oregon Class Action, on February 14, 2019, Deloitte asked CLAWA to confirm by February 20 whether it would make a supplemental production.  *See* Masuda Decl. Ex. 3 at 1.  On February 20, CLAWA responded by letter, stating expressly for the first time that it was reneging on its agreement to produce relevant, responsive

documents.  CLAWA expressed concern that Deloitte may pursue claims against CLAWA "based on documents produced in response to the Subpoena."  Masuda Decl. Ex. 4 at 2.  CLAWA then reasserted its relevance objections to Request Nos. 11 and 17-19, and overbreadth objections to Request Nos. 7-10, 12, and 15.  This Motion followed.

## III.  CLAWA'S STATEMENT OF FACTS

### A.  Procedural History of the Underlying Litigation, Including Plaintiff's Broad Definition of the Proposed "Class," Denial of Deloitte and other Defendants' Motions to Dismiss and Motions for Protective Orders or to Compel Production, and Deloitte's and Sidley's Pursuit of Claims for Contribution Against Third-Party Registered Investment Advisors

The underlying litigation to which this motion relates was initiated on April 4, 2016 in the District of Oregon.  *Ciuffitelli et al v. Deloitte & Touche LLP et al.*, 16-cv-00580 (April 4, 2016, D. Or.).[2]  Plaintiffs have filed several iterations of their complaint, and the Oregon Court has issued numerous rulings to date, including on discovery issues and Defendants' multiple requests seeking dismissal of Plaintiffs' claims.  *See e.g.*, Dkt No. 242 (Magistrate Judge's orders detailing findings and recommendations granting in part and denying in part Defendants' request for dismissal of Plaintiffs' First Amended Complaint), attached to Seymore Declaration as Ex. 2; Dkt. No 250 (order adopting Dkt. No. 242 in its entirety). During the pendency of Defendants' initial motions to dismiss, on September 29, 2016, Deloitte sought a protective order against producing certain requested documents it argued constituted premature merits discovery (given the above-noted pending motions to dismiss).  *See* Dkt. No. 139.  In its order granting in part and denying in part Deloitte's motion, the Oregon Court resolved that it "should avoid making merits rulings when deciding discovery motions, which can be avoided

---

[2] All Dkt. references in CLAWA's respective portions of this joint stipulation are to the docket entries in *Ciuffitelli et al v. Deloitte & Touche LLP et al.*, 16-cv-00580 (April 4, 2016, D. Or.).

1   here by limiting discovery's scope until the pending motions are decided."

2   Seymore Decl. Ex. 1, p. 18.

3        On September 8, 2017, Plaintiffs filed their Second Amended Complaint

4   ("SAC").  Dkt. No. 257, attached to Masuda Declaration as Exhibit 1.  The SAC

5   broadly defines the proposed putative class as "all persons who purchased Aequitas

6   securities on or after June 9, 2010 (the "Class")."  Masuda Decl. Ex. 1, ¶ 203.  The

7   SAC sets forth certain allegations against the various Defendants, including

8   Deloitte; Plaintiffs specifically allege that Deloitte "participated and materially

9   aided in the sales of securities by Aequitas beginning to later than September 13,

10  2013." *See e.g.,* Masuda Decl. Ex. 1, ¶ 190.  More specifically, ¶ 190 of the SAC

11  alleges that Deloitte participated and materially aided in the sales of securities by

12  Aequitas, as follows:

13      a. Deloitte acted as the auditor for numerous Aequitas
    investment vehicles . . . .

14

15      b. Deloitte's auditing services enabled the Aequitas
    group to conduct its securities business as a whole.

16  Deloitte's willingness to audit Aequitas only below the
    level of Holdings gave Aequitas the freedom it needed to

17  undertake the transfers and transactions with the entities
    outside the Deloitte-audited fundraising group that

18  allowed it to create and perpetuate the illusion of
    financial health.  Aequitas needed the stamp of

19  legitimacy provided by a "clean" audit opinion from an
    established and reputable audit firm in order to attract,

20  secure, and retain investors and their funds. . . . .

21      c. . . . Having Deloitte as the auditor of its securities

22  business gave Aequitas clout with prospective and
    existing investors, and the Deloitte-audited financial

23  statements were a material part of the information made
    available to prospective and existing investors. . . .

24

25      d. Aequitas provided the financial statements audited by
    Deloitte to prospective and existing investors who were

26  deciding whether to invest or re-invest in Aequitas
    securities. . . . Deloitte was aware that . . . the audited

27  financial statements would be used in this way and for
    this purpose.

28

e. Deloitte's working papers acknowledge that SEC rules required the distribution of audited financials and that the audited financials would be used by potential and current investors.

f. Aequitas identified Deloitte as the auditor in the PPMs for various Aequitas securities, as alleged herein. Aequitas also identified Deloitte as the auditor for the Aequitas Funds in public disclosures filed with the SEC. . . .

g. . . . Aequitas could not have continued to sell securities without Deloitte's annual audits, nor could Aequitas have continued to sell securities without distributing the annual Deloitte-audited financial statements to investors.

h. Deloitte was identified as auditor in marketing materials for Aequitas securities, and Deloitte approved Aequitas forwarding its contact details to potential investors conducting due diligence.

*Id*.  Notably, none of the allegations in the SAC concern third parties or specifically non-party CLAWA.

On or around October 23, 2017, multiple Defendants, including Deloitte and Sidley, again filed joint and individual motions to dismiss, this time attacking the SAC.  *See*, *e.g.*, Dkt. Nos. 277 and 278.  In resolving Defendants' second round of motions to dismiss, the Oregon Court largely rejected Deloitte's arguments for dismissal, holding that Plaintiffs had plausibly alleged a "casual connection" between Deloitte and all sales of securities to Plaintiffs occurring after November 30, 2013; the Oregon Court thus dismissed only those claims against Deloitte based on sales occurring before November 30, 2013.  *See* Dkt. No. 340, at 25-28 (Magistrate Judge's findings and recommendations), attached to Seymore Declaration as Ex. 3; Dkt. No. 368 (order adopting Dkt. No. 340 in its entirety).

Thereafter, on December 10 and 11, 2018, Deloitte and Sidley sought to bring identical sets of claims for contribution against certain third-party Registered Investment Advisors ("RIAs"), claiming that the named RIAs "directly participated and materially aided in the sale of Aequitas securities to a far greater

JOINT STIPULATION RE DELOITTE & TOUCHE
LLP'S MOTION TO COMPEL

extent than [Sidley and Deloitte] are alleged to have done." Dkt. No. 422 (Sidley's Third-Party Complaint for Contribution), ¶ 5; Dkt. No. 423, at 1 (Deloitte's Motion for Leave to File Third-Party Complaint for Contribution "identical in all material respects to Sidley's"). Plaintiffs moved to strike and/or opposed both requests on the basis that the claims against the third-parties had not yet accrued (and/or were untimely), and, to the extent permitted to proceed in connection with the underlying litigation, would hinder judicial efficiency, be highly prejudicial to Plaintiffs, and delay an already burdened case. *See* Dkt. Nos. 436-37. Plaintiffs' motion to strike and Deloitte's request for leave to file its third-party claims are fully briefed but still pending. *See* Dkt. No. 471 (noting both have been taken under advisement by the Oregon Court).

On January 24, 2019, the Oregon Court also denied a motion to compel brought by defendant Sidley seeking certain discovery from co-defendant Tonkon Torp LLP ("Tonkon"); therein, the Oregon Court cited the discovery scope-limiting provisions of Rule 26(b) and held that the information Sidley was seeking was irrelevant. *See* Dkt. No. 448, pp. 2-3, 9, attached to Seymore Declaration as Ex. 4.

**B.    Non-party CLAWA's Receipt of and Good-Faith Efforts to Understand, Narrow, and Respond to Deloitte's Overly Broad and Improper Subpoena**

Not long before attempting to sue the above-noted third-party RIAs, Deloitte served CLAWA, also an RIA, with a subpoena pursuant to Federal Rule of Civil Procedure 45. *See* Subpoena from Deloitte to CLAWA (the "Subpoena"), attached to Seymore Declaration as Ex. 5. The Subpoena contained nineteen (19) requests, each seeking a plethora of documents based on an expansive set of definitions and instructions. *Id.*, at pp. 7-10. On September 18, 2018, counsel for CLAWA contacted counsel for Deloitte to request an extension of time to respond to the

1   Subpoena and a conference to discuss the Subpoena requests.  Masuda Decl. Ex. 2,

2   pp. 9-10 (email from E. Seymore to G. Masuda).

3       On September 19, 2018, counsel for CLAWA and Deloitte participated in a

4   phone call to meet and confer regarding the Subpoena.  *See* Masuda Decl. Ex. 2,

5   pp. 7-8 (September 20, 2018 email from E. Seymore to E. Chen documenting

6   September 19, 2018 call).  During that call, Deloitte represented to CLAWA that

7   the primary purpose of serving the Subpoena was to obtain information relevant to

8   assisting Deloitte in its efforts to oppose class certification.  *Id.* ("during

9   yesterday's call, I understood you and your colleague Gavin Masuda to explain

10  that the primary purpose of the Subpoena is to seek documents related to Deloitte's

11  efforts to defeat class certification in the pending litigation . . .").  No mention was

12  made at that time nor at any time thereafter—until after Deloitte filed its action for

13  contribution—that Deloitte was also seeking merits discovery related to its

14  defenses, namely that other RIAs like CLAWA were somehow responsible instead

15  of or in addition to Deloitte, and documents in support of related claims for

16  contribution against such third-party RIAs.  Counsel for Deloitte omitted to

17  disclose these motives for its discovery and proceeded to engage CLAWA on

18  discovery Deloitte represented was strictly related to class certification.

19      Based on its understanding of Deloitte's representations during the

20  September 19, 2018 call, and a cursory review regarding the then-state of the

21  underlying litigation and pending issues before the Oregon Court, non-party

22  CLAWA agreed to engage in a review to identify and produce what it understood

23  to be relevant to class certification.  *See* Masuda Decl. Ex. 2, pp. 7-8.  Specifically,

24  CLAWA advised Deloitte that it was amenable to producing "documents sufficient

25  to identify:  1) CLA[3]'s clients who invested in Aequitas Securities recommended

26  by CLA; 2) the terms and conditions of those investments; 3) what information

27  _____

28  [3] Although the Subpoena refers to "CLA", "CLAWA" is the entity named in the
    Subpoena.

1   was provided to CLA (by Aequitas) about the Aequitas Securities it recommended;

2   and 4) what information was conveyed by CLA to its clients about the Aequitas

3   Securities it recommended (the "Class Certification-Related Information")".  *Id.*,

4   pp. 7-8 (email from E. Seymore to E. Chen and G. Masuda defining the scope of

5   CLAWA's agreement to collect, review, and produce the Class Certification-

6   Related Information).

7        CLAWA did not during the September 19, 2018 call, or at any point

8   thereafter, agree to produce anything beyond the Class Certification-Related

9   Information (i.e. that which it understood to be relevant to class certification based

10   on Deloitte's representations), nor did it agree at any point to waive its various

11   other objections to the Subpoena that otherwise conditioned the nature and scope

12   of what it would produce.  *Id.*  Indeed, the September 19, 2018 email expressly

13   informed Deloitte that CLAWA would be serving formal responses and objections

14   to the Subpoena.  *Id.*  CLAWA thereafter acted in good faith to identify, collect,

15   and review potentially relevant Class Certification-Related Information, which

16   efforts required the investment of time and cost on the part of CLAWA.

17        Deloitte at all times reserved its "right to later pursue production of

18   documents not included in [CLAWA's] definition of 'Class Certification-Related

19   Information'" and further insisted on the prompt production of certain documents

20   as a condition of granting CLAWA any extension of time to otherwise respond to

21   the Subpoena.  Masuda Decl. Ex. 2, p. 5 (email from E. Chen to E. Seymore), pp.

22   8-9 (email from E. Chen to E. Seymore stating that "Deloitte will agree to an

23   extension . . . for CLA[WA]'s formal responses, if CLA[WA] can commit to

24   producing at minimum the following initial set of documents by that date, if not

25   sooner:  (1) Documents sufficient to identify all of CLA[WA]'s clients that

26   invested in AEQ and the terms of those transactions (RFPs #1 and #2) . . . .").

27   Accordingly, on October 2, 2018, CLAWA made an initial production consisting

28   of a table reflecting all of CLAWA's clients who invested in ACOF and the dates

1    and amounts of each respective investment.  *See* Letter from E. Seymore to E.

2    Chen dated October 1, 2018, attached to Seymore Declaration as Ex. 6.

3          Subsequently, on October 12, 2018, CLAWA made a second production,

4    totaling over 6,100 pages and containing specific documentation for each of

5    CLAWA's 33 clients who invested in ACOF, along with offering and sales

6    materials concerning ACOF that were provided to CLAWA by Aequitas or which

7    CLAWA generated and provided to its clients.  *See* Letter from E. Seymore to E.

8    Chen dated October 12, 2018, attached to Seymore Declaration as Ex. 7.  The

9    subscription documentation produced as part of CLAWA's second production

10   reflected that each of CLAWA's clients who invested in Aequitas executed a no-

11   reliance clause that, among other things, represented, warranted and acknowledged

12   that, "[t[he Subscriber is investing in the Partnership solely on the basis of the

13   Partnership Documents, irrespective of any other information which the Subscriber

14   may have received from the Partnership or any Sponsor Party" and that the

15   Subscriber "understands that it may not rely upon, and affirms that in deciding to

16   invest in the Partnership, it has not relied upon, any representations or other

17   information (whether oral or written), including, without limitation, any forecast,

18   exhibit, or any other marketing or analytical materials provided by the Partnership,

19   any Sponsor Party, any of their respective employees or affiliates other than as set

20   forth in the Partnership Documents."  *See* Seymore Decl., ¶ 9 (containing

21   screenshot of no-reliance clause language in the CLAWA-client investors'

22   Aequitas subscription agreements).

23         In connection with both productions, CLAWA acted in good faith, investing

24   time and incurring costs to facilitate the production of the Class Certification-

25   Related Information to Deloitte.  The combined contents of CLAWA's two

26   productions to date total more than 6,100 pages and include documents sufficient

27   to identify each of the categories CLAWA understood to be the focus of Deloitte's

28   Subpoena, i.e., the four categories of documents CLAWA included in its

September 19, 2018 email defining Class Certification-Related Information.  *See*

Seymore Decl. Ex. 7 (October 12, 2018 letter to Deloitte reflecting a production of

documents bearing bates stamps CLA-0000002-6105).  As documented in

CLAWA's correspondence to Deloitte, its productions to date are inclusive of all

that it represented to Deloitte it would produce.  *See e.g.,* Seymore Decl. Exhs. 6-7.

### C. Non-party CLAWA's Timely Service of and Repeated Reiteration of Its Objections to Deloitte's Overly Broad and Improper Subpoena

In light of Deloitte's unwillingness to waive its right to seek any and all

documents in response to its Subpoena requests, CLAWA prepared and timely

served upon Deloitte its formal responses and objections.  *See* Third-Party

CliftonLarsonAllen Wealth Advisors' Responses and Objections to Deloitte &

Touche LLP's Subpoena to Produce Documents, Information, or Objects or to

Permit Inspection of Premises in a Civil Action (*hereinafter* "CLAWA's

Responses and Objections"), set forth above in Deloitte's statement of facts and

attached to the Seymore Declaration as Ex. 8.  Therein, CLAWA documented its

conditional agreement to provide the Class Certification-Related Information in

response to thirteen of Deloitte's nineteen requests.  *Id.*  Towards this end,

CLAWA's Responses and Objections also set forth general and specific objections,

in whole or in part, to those of the Subpoena requests that CLAWA found

objectionable on one or more bases, including almost universally, that the Requests

sought information which was not relevant to class certification.  *Id.*  Additionally

and among other grounds, CLAWA objected to certain Subpoena requests on the

basis that they sought information "not in any way specific to CLA[WA]'s client

who invested in the Aequitas Entities or Securities that CLA[WA] recommended,

nor did [they] bear any relevance to any claim or defense asserted by any party in

the underlying litigation, or appear to be in furtherance of the issues in dispute in

the litigation or at this stage of the proceedings."  *Id.*, Requests Nos. 11-2 and 17-

19 (seeking, for example, documents reflecting CLAWA's internal policies,

procedures, code of ethics/conduct, compliance manuals, operational procedures, results of annual compliance reviews, due diligence records, compensation and benefits in connection with Aequitas securities, communications and documents exchanged between CLAWA and the SEC or any other federal or state regulatory or law enforcement agency, and deposition transcripts, including for any proceedings before regulatory or other government agencies).

### D. Deloitte's Misconstruction of The Scope of That Which CLAWA Agreed to Produce and CLAWA's Response in Good-Faith Agreeing to Engage in Further Review to Determine if It Possessed Additional Potentially Relevant Documents

On November 8, 2018, counsel for Deloitte advised CLAWA that it was dissatisfied with CLAWA's production, which it claimed did not include the entirety of the Class Certification-Related Information that CLAWA had agreed to provide. Masuda Decl. Ex. 2, pp. 4-5. Although CLAWA had never agreed to do so, Deloitte specifically insisted that CLAWA produce, among other things, email communications between CLAWA and Aequitas and CLAWA and its clients related to Aequitas. *Id.* Claiming it would limit the burden on CLAWA, Deloitte identified a subset of CLAWA's clients to which it would "prioritize" (i.e. limit) its additional requests for email and other documentation; Deloitte incorrectly stated that this represented twelve out of "CLA[WA]'s 75+ clients who invested in Aequitas" when in fact that "subset" encompassed fifteen (15) (or almost 50%) of CLAWA's thirty-three (33) clients (the "Priority Investors"). *Id.* Deloitte again expressly reiterated its reservation of rights to pursue compliance with each and every of its Subpoena requests in their entirety. *Id.*

In its response to Deloitte's November 8, 2018 email, CLAWA objected to Deloitte's mischaracterization of the parties' respective agreements, including the scope of what CLAWA had initially agreed to produce in response to the Subpoena, as well as the number of client investors. Masuda Decl. Ex. 2, pp. 3-4 (email from E. Seymore to E. Chen and G. Masuda stating "we are not in

1  agreement with the representations [in your email], nor do we think [your email]
2  accurately reflects the respective parties' understanding to date regarding what
3  materials would be provided by CLA[WA] in response to the subpoena . . .").  In
4  good faith, CLAWA nonetheless advised Deloitte that it would engage in a further
5  review and analysis of documents in its possession, concerning only the Priority
6  Investors, to determine whether it was in possession of additional potentially
7  relevant Class Certification-Related Information.  *Id.*  At no point did CLAWA
8  agree to provide any (certainly not specific) additional materials in response to
9  Deloitte's November 8, 2018 email demand for supplemental documents; nor did
10 CLAWA ever affirmatively represent that it would produce any email
11 communications.

12         Thereafter, on November 20, December 19, and January 2, 2019, counsel for
13 CLAWA advised Deloitte of the status of CLAWA's further review and analysis,
14 which it had initiated on or around November 9, 2018, and which continued during
15 and throughout the Thanksgiving, Christmas, and New Years' holidays.  Masuda
16 Decl. Ex. 2, p. 3 (November 20, 2018 email update from E. Seymore to E. Chen),
17 p. 2 (December 19, 2018 email update from D. Porteous to E. Chen), and p. 1
18 (January 2, 2018 email update from D. Porteous to E. Chen).  CLAWA specifically
19 advised Deloitte in the context of these updates that, on more than one occasion, it
20 had experienced a delay in connection with the review of its documents, including
21 email data it was reviewing, but that it was nonetheless advancing its efforts to
22 identify, collect, and review its documents for additional potentially relevant Class
23 Certification-Related Information.  *Id.*

24       **E.**   **CLAWA's Good-Faith Efforts to Confer with Deloitte After Being
25              Blindsided Upon Learning that Deloitte Was Pursuing
               Contribution Claims Against Other Third-Party Registered
26              Investment Advisors**

27       In the midst of CLAWA's ongoing review, counsel for CLAWA became
28 aware that Deloitte and Sidley had filed for contribution against certain third-party

1   RIAs on December 10 and 11, 2018, respectively.  Dkt. Nos. 422-23.  After

2   reviewing these filings, counsel for CLAWA contacted counsel for Deloitte

3   requesting an opportunity to meet and confer to discuss the issue of Deloitte's

4   filing of third-party contribution claims and what appeared to be the true,

5   undisclosed motivations for its discovery – namely merits discovery and not solely

6   class certification as Deloitte had repeatedly affirmed – in support of Deloitte's

7   "defenses" to join others to the case in an effort to deflect blame from itself.

8   Masuda Decl. Ex. 2, p. 1 (January 11, 2019 email from D. Porteous to E. Chen

9   noting that Deloitte's third-party complaint "puts the third party discovery [it is]

10  seeking from CLA[WA] into a different light").

11      On January 17, 2019, counsel for CLAWA and Deloitte participated in a

12  phone call, during which counsel for Deloitte represented that it could provide

13  CLAWA with no assurances that Deloitte would not pursue and any all potential

14  claims against CLAWA, including the right to seek contribution from it in

15  connection with any liability exposure in the underlying litigation.  *See* Letter from

16  E. Seymore to E. Chen dated February 20, 2019, at p. 2, attached to Seymore

17  Declaration as Ex. 9.  Counsel for Deloitte further advised counsel for CLAWA

18  that it was entirely possible Deloitte would base such potential claims on

19  information obtained through reviewing documents produced by CLAWA in

20  response to the Subpoena.  *Id.*  This admission gave new light to many of the

21  confusing and irrelevant requests Deloitte had propounded in the Subpoena, as

22  discussed herein, which CLAWA objected to as having little or no bearing on class

23  certification, i.e., what putative class members received and relied upon in making

24  their decision to invest as Deloitte had explained.

25      Based on Deloitte's representations during the January 17, 2019 call,

26  counsel for CLAWA engaged in additional diligence to attempt to understand the

27  scope of the class which Plaintiffs had proposed, and the claims as pled in the SAC

28  against Deloitte and the other Defendants.  CLAWA also simultaneously continued

1   to advance, and ultimately completed, its analysis of the additional materials it

2   represented to Deloitte it would assess for potential relevance to class certification,

3   including the email communications for the Priority Investors, although not all the

4   other investors.  The additional review CLAWA conducted, particularly of

5   potentially relevant email data, required a significant investment of employee,

6   attorney, and ESI vendor time to identify, collect, process, search, and analyze ESI.

7   Upon concluding this additional review, CLAWA determined that it could not

8   fairly discern the relevance of any of the additional materials it had reviewed to the

9   issue of class certification; rather, as it explained in its February 20, 2019 letter to

10  counsel for Deloitte, Deloitte's requests appeared tethered to its pursuit of

11  information to support potential claims against third-party RIAs, including

12  CLAWA, as well as to defend against the merits of Plaintiffs' claims, neither of

13  which bore any connection to the issue germane to class certification.  Seymore

14  Decl. Ex. 9.   CLAWA, however, expressly advised Deloitte in the February 20,

15  2019 letter that it remained willing to engage in a meet and confer call with

16  counsel for Deloitte to attempt to resolve CLAWA's concerns about the nature of

17  the Subpoena requests, and try to better understand Deloitte's rationale for its

18  position that the additional materials being requested were somehow relevant to the

19  issues germane to class certification. *Id.*, p. 3.  CLAWA's February 20, 2019 letter

20  also advised Deloitte that, given what it had learned concerning Deloitte's filing of

21  third-party contribution actions and its review of the scope of issues germane to

22  class certification, and presuming no further agreement could be reached, it:  1)

23  would not be making any additional production of documents; and 2) was

24  supplementing its prior objections to further object to Deloitte's Subpoena requests

25  as intended to seek documents relating to the merits of Deloitte's potential

26  contribution claims against third parties, and its merits-related defenses in the

27  underlying litigation, neither of which bore any connection to class certification

28  contrary to what Deloitte had repeatedly represented.  Seymore Decl. Ex. 9.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**F.     Deloitte's Initiation of Motion Practice Without A Meet and Confer, Continued Refusal to Stipulate to the Filing of this Matter in the District of Oregon and Insistence on Full Compliance with All Outstanding Document Requests, Reneging on Previous Negotiations**

Deloitte did not respond to CLAWA's offer to further meet and confer. Instead, on February 27, 2019, counsel for Deloitte sent counsel for CLAWA an email attaching an initial draft of this joint stipulation with a demand that CLAWA respond within seven days pursuant to Central District of California Local Rule 37. Instead of moving to compel production of the narrowed set of requested documents concerning the twelve Priority Investors, Deloitte's draft joint stipulation expanded its demand to include each and every document requested in the original Subpoena requests.

On March 4, 2019, counsel for CLAWA advised Deloitte that it was consenting to transfer of Deloitte's motion to compel to the District of Oregon pursuant to Rule 45(f), and for the sake of judicial efficiency asked Deloitte if it would stipulate to all motions relating to the Subpoena being filed in the Oregon Court in the first instance. *See* email from M. Jaeger to E. Chen dated March 4, 2019, attached to Seymore Declaration as Ex. 10, pp. 2-3. CLAWA further informed Deloitte that it did not believe Deloitte had properly conferred with it in person, or at a minimum telephonically, as required by Local Rule 37-1; accordingly, CLAWA advised Deloitte that it did not believe the time period within which it had to prepare a response had even begun to run. *Id.* Deloitte responded via email on March 5, 2019 that it would not agree to CLAWA's requested stipulation. *Id.* p. 2 (email from E. Chen to M. Jaeger).

On March 6, 2019, counsel for CLAWA and Deloitte participated in a phone call during which they expressed their respective positions. Declaration of David Porteous, ¶ 2. CLAWA again advised Deloitte that it did not believe Deloitte had complied with the meet and confer obligations of the Local Rules and that it remained willing to engage in such efforts. *Id.*, ¶ 2(a)-(b). CLAWA further

1   advised Deloitte that, should the parties be unable to reach agreement as to the

2   scope of any further response by CLAWA to the Subpoena, and presuming

3   Deloitte continued to refuse to stipulate to filing its motion in the District of

4   Oregon, CLAWA intended to file a motion to transfer in this Court. *Id.*, ¶ 2(c).

5   Deloitte refused to stipulate to the transfer. *Id.*, ¶ 3.

6        Counsel for Deloitte and CLAWA again conferred on March 8, 2019 to

7   attempt to compromise on the scope of a further response by CLAWA, however no

8   mutually acceptable agreement was reached.  Porteous Decl., ¶ 4.  Yet again,

9   Deloitte refused to agree to stipulate to file its motion in the District of Oregon. *Id.*

10       **G.    CLAWA's Re-Assessment of the Burdens of *Full* Compliance
             with the Subpoena, Which Deloitte Through This Motion Now**
11           **Seeks**

12       CLAWA also endeavored around this time to again review the Subpoena

13   requests to which it had previously and continues to object to attempt to decipher

14   even some tangential connection to the issue of class certification and to further

15   assess the burdens associated with producing such information. *See* Seymore Decl.,

16   ¶ 13.[4]

17       The CLAWA personnel responsible for operations and compliance with

18   knowledge of CLAWA's documents and other electronically-stored information

19   ("ESI"), further came to understand that, to the extent the Subpoena requests to

20   which CLAWA has objected are subject to reasonable construction (many being

21   objectionable as vague and ambiguous), and taking such objectionable requests at

22

23   ─────────────────────
     [4] As explained in CLAWA's February 20, 2019 letter to Deloitte, CLAWA saw
24   (and continues to see) no connection to the issue of class certification in the
     documents sought by all or portions of Requests Nos. 1, 7-12, 15, and 17-19,
25   which seek documents, including and without limitation:  all of CLAWA's internal
     policies and procedures governing client onboarding, code of ethics, conduct,
26   compliance, and monitoring; the results of CLAWA's internal audits;
     correspondence and documents CLAWA may have provided to the SEC and any
27   other regulatory or law enforcement agency; document concerning CLAWA's
     clients who did not invest in Aequitas, and all of CLAWA's internal analysis and
28   diligence regarding Aequitas, regardless of whether that information was
     disseminated to CLAWA's clients.  *See* Seymore Decl. Ex. 9.

1   face value as best CLAWA can discern, have explained that the burden on

2   CLAWA to identify, collect, review, and produce the gambit of requested

3   information, would be considerable; at a minimum, operations and compliance

4   personnel understand that compliance with the various requests, which almost

5   universally seek historical records dating back as far as 2012, if not earlier, would

6   require the devotion of time by multiple employees for a period of additional

7   multiple work weeks to engage in efforts to locate, collect, review, and export,

8   potentially responsive materials, as well as impose a strain on CLAWA's IT and

9   other systems where those documents are or would need to be maintained and/or

10  collected.  Seymore Decl., ¶ 13.  The burdens of such efforts on CLAWA would

11  include, without limitation, disruption to CLAWA's regular business, loss of

12  employee hours to focus on these efforts which would otherwise be devoted to

13  CLAWA business, impact on IT and other system capacity across and servicing

14  routine company needs, the cost affiliated with these losses and any additional

15  technical needs CLAWA would need to undertake in order to comply, such as

16  utilization of an ESI vendor to receive, process, store, and export responsive

17  ESI.  *Id.*

18       Unable to resolve their differences, on March 13, 2019, counsel for CLAWA

19  provided its responsive portions of the joint stipulation to counsel for Deloitte.

20  Porteous Decl., ¶ 5.

21  **IV.   Deloitte's Position**

22       **A.   The Subpoena Seeks Relevant Information And Is Reasonably
           Calculated To Lead To The Discovery Of Admissible Evidence**
23

24       The documents that Deloitte seeks from CLAWA are relevant to the Oregon

25  Class Action for several reasons.  The scope of discovery extends to "any

26  nonprivileged matter that is relevant to any party's claim or defense and

27  proportional to the needs of the case." FRCP 26(b)(1).  "Evidence is relevant if 'it

28  has any tendency to make a fact more or less probable than it would be without the

evidence.'" *Dunlap v. Liberty Nat. Prod., Inc.*, 2015 WL 1778477, at *11 (D. Or. Apr. 20, 2015) (citing FRE 401).

1.     **The Requested Documents Are Relevant to Plaintiffs' Claims Of "Seller Liability" And "Nonseller Liability"**

The Requested Documents are relevant to the subject matter of the Oregon Class Action which, as discussed above, involves (i) a "seller liability" claim that Aequitas sold its securities by means of false or misleading statements; and (ii) a "nonseller" claim that Deloitte materially aided in those allegedly illegal sales when it was identified to prospective investors as Aequitas's auditor.  Both claims raise fundamental questions about how Aequitas sold its securities—questions that CLAWA's documents will help to answer.

With respect to "seller liability," CLAWA's documents are relevant to whether Aequitas sold investments by means of untrue statements of material fact or misleading omissions.  *See* ORS 59.115(1)(b).  More specifically, what Aequitas told CLAWA about its products and business, and in turn, what CLAWA told its customers about Aequitas bear directly on the question of whether Aequitas sold securities "by means of" untrue statements or misleading omissions.  *See, e.g., TSC Indus. v. Northway*, 426 U.S. 438, 449 (1976) (holding that "there must be a substantial likelihood that the disclosure of the omitted fact would have been viewed by the reasonable investor as having significantly altered the 'total mix' of information made available").  If there are no primary violations of Oregon securities law, Deloitte cannot be "secondarily" liable.  The Requested Documents are relevant to these issues.  *See, e.g.*, RFP No. 4 (offering and sale materials received from Aequitas); RFP No. 7 (communications with Aequitas or other third parties relating to Aequitas or its securities, including those that informed CLAWA's services or advice); RFP No. 8 (documents and communications relating to events regarding Aequitas or its securities).

As to "nonseller liability," CLAWA's documents are relevant to whether Deloitte "participate[d] or materially aid[ed]" in the sale of Aequitas securities. *See* ORS 59.115(3).  Plaintiffs allege that Deloitte-audited financial statements were "material" to their decision to invest in Aequitas—a claim that Deloitte denies.  Masuda Decl. Ex. 1.  The Requested Documents inform the reasons *why* CLAWA recommended Aequitas to its clients, and, moreover, *why* CLAWA's clients ultimately invested in Aequitas.  *See, e.g.*, RFP Nos. 4, 7, and 8 (described above); RFP No. 10 (agreements and disclosures regarding CLAWA's services); RFP No. 11 (documents addressing CLAWA's fiduciary and regulatory obligations); RFP No. 12 (documents relating to CLAWA's due diligence of its clients' Aequitas investments), RFP No. 14 (agreements between CLAWA and third parties such as referral or selling agreements); RFP No. 17 (documents relating to CLAWA's compensation in connection with Aequitas transactions); and RFP Nos. 18-19 (documents produced or deposition testimony in proceedings before federal regulatory agencies relating to Aequitas securities).

## 2. The Requested Documents Are Relevant To Class Certification

In addition, for the putative class to be certified, Plaintiffs must demonstrate that the proposed class satisfies all prerequisites of Federal Rule of Civil Procedure 23.  Rule 23(a) provides that claims may be pursued as a class only if:  (1) the class is so numerous that joinder of all members is impracticable ("numerosity"); (2) there are questions of law or fact common to the class ("common questions"); (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class ("typicality"); and (4) the representative parties will fairly and adequately protect the interests of the class ("adequacy").  Rule 23(b)(3) adds that a class may only be certified if "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members."

Although Plaintiffs will not file their motion for class certification until April 26, 2019, Deloitte anticipates opposing on a number of bases, including that class treatment is inappropriate under Rule 23(b)(3) because common questions of law or fact common to class members do not predominate over individualized inquiries.  Fed. R. Civ. P. 23(b)(3); *see also In re Enron Corp. Sec. Derivative & "ERISA" Litig.*, 529 F. Supp. 2d 644, 677 (S.D. Tex. 2006) ("[T]he predominance element is 'far more demanding' because it 'tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation.'").  The information Deloitte seeks from CLAWA relates directly to this inquiry.

First, variations in the Aequitas offering materials, as well as differences in oral representations made by Aequitas and the RIAs to individual purchasers, bear upon the predominance analysis under Rule 23(b)(3).  *See, e.g.*, *Moore v. PaineWebber, Inc.*, 306 F.3d 1247, 1253 (2d Cir. 2002) (noting that "the Third, Fourth, Fifth, Sixth, and Seventh Circuits … have held that oral misrepresentations are presumptively individualized"); *Johnston v. HBO Film Mgmt., Inc.*, 265 F.3d 178, 190 (3d Cir. 2001) (denying class certification where claims involved oral representations beyond prospectus); *In re Sci. Control Corp. Sec. Litig.*, 71 F.R.D. 491, 507-08 (S.D.N.Y. 1976) (denying class certification because "individual brokers made representations to individual customers" about relevant facts).  Courts also have refused to certify a class when the materiality of representations varied over the class period.  *E.g.*, *J.H. Cohn & Co v. Am. Appraisal Assocs., Inc.*, 628 F.2d 994, 998 (7th Cir. 1980) (denying class certification where a purchaser early in the class period "would face a different question of proof on the materiality issue" than a later purchaser "after a great deal more information concerning [the issuer] was available").  The Requested Documents—which include Aequitas sales materials provided to investors by CLAWA (RFP Nos. 4 and 5) and communications between CLAWA and its clients regarding the Aequitas securities (RFP No. 9)—shed light on whether investors received

1   individualized Aequitas sales pitches that may preclude class certification.  *See,*

2   *e.g.,* Masuda Decl. Ex. 5 at 96:10-23 (plaintiff Mohan Harihara in related Oregon

3   state court action, *Ramsdell v. Deloitte*, Case No. 16CV40659 (Multnomah Cty.

4   Cir. Ct.), testifying that his RIA described Aequitas as a "solid" investment despite

5   disclosures the investment involved a "high degree of risk"); Masuda Decl. Ex. 6 at

6   232:20-233:15 (plaintiff Michael Thomas in related Oregon state court action,

7   *Pommier v. Deloitte*, Case No. 16CV36439 (Multnomah Cty. Cir. Ct.), testifying

8   that his RIA did not inform him that Aequitas invested in Corinthian Colleges,

9   despite disclosures stating otherwise, and that had he been informed of this fact,

10   "would have run from [the Aequitas investment] faster than you could believe").

11          Second, the Requested Documents inform the issue of whether

12   individualized inquiries predominate over an essential element of Plaintiffs' claims

13   under ORS 59.115(1)(b)—specifically, whether each investor lacked knowledge

14   that the representations were untrue.  The Requested Documents illustrate the types

15   of information and knowledge imparted to prospective class members.  Courts

16   routinely have refused certification where class members possessed differing levels

17   of knowledge concerning the alleged misrepresentations.  *See, e.g.*, *In re Initial*

18   *Public Offerings Sec. Litig.*, 471 F.3d 24, 43 (2d Cir. 2007) (reversing certification

19   of class where individualized inquiries were required to determine lack of

20   knowledge based on evidence and allegations that knowledge of alleged scheme

21   were widespread); *In re Lehman Bros. Sec. and ERISA Litig.*, No. 08 CIV 5523

22   LAK, 2013 WL 440622, at *3–4 (S.D.N.Y. Jan. 23, 2013) (denying class

23   certification because "the knowledge of each potential class member . . . would cut

24   against a finding that common questions predominate"); *N.J. Carpenters Health*

25   *Fund v. Residential Capital, LLC*, 272 F.R.D. 160, 169 (S.D.N.Y. 2011), *aff'd* 477

26   Fed. App'x 809, 813 (2d Cir. Apr. 30, 2012) (denying class certification where

27   "different levels of knowledge can be imputed to investors who purchased at

28   different times because throughout the relevant period more and more information

became publicly available, including reports of government actions or investigations, analysts' reports, news items and raw data").  Among Plaintiffs' alleged misrepresentations, Plaintiffs claim that they were misled that the Aequitas securities were "secure, stable, and liquid."  Masuda Decl. Ex. 1 ¶ 3.  The Requested Documents—which include CLAWA's due diligence and review of its clients' Aequitas transactions (RFP Nos. 6 and 12) and disclosures, waivers, and acknowledgements signed by the investors regarding the Aequitas securities (RFP Nos. 10 and 13)—shed light on whether individualized inquiries regarding investors' actual knowledge of the alleged representations may preclude class certification.

Third, the Requested Documents inform the issue of whether individualized inquiries predominate regarding Deloitte's secondary liability with respect to each class member.  The identification of Deloitte as auditor may not have impacted Aequitas investors equally, and for many, may have had no impact at all.  *See* Masuda Decl. Ex. 6 at 244:5-12 (plaintiff Thomas testifying that he was not aware that Deloitte was the auditor for Aequitas prior to his decisions to invest or renew his Aequitas investments); Masuda Decl. Ex. 7 at 106:19-22 (plaintiff Julia Tung in related Oregon state court action, *Layton v. Deloitte*, Case No. 17CV42915 (Multnomah Cty. Cir. Ct.), testifying same).  The Requested Documents are relevant to determining what was communicated to CLAWA clients regarding Deloitte, whether clients received or reviewed Aequitas audited financials, and what impact Deloitte's purported involvement had on the investment decision.  *See Galbraith v. MML Inv'r Servs., Inc.*, 2009 WL 4955617, at *5 (D. Or. Dec. 11, 2009) (finding that a defendant is secondarily liable under ORS 59.115(3) when the sale "'would not and could not have been completed or consummated' without the material aid of the defendant").  The Requested Documents—which include documents referring to Deloitte and the audited financial statements (Request Nos. 15 and 16)—are relevant to this inquiry. In addition, other reasons could have

motivated the transactions, such as high interest rates or a promising business model, that would create individualized inquiries with respect to Deloitte's "nonseller liability." *Supra* Section IV.A.1.

During the meet-and-confer process, CLAWA failed to provide any authority to demonstrate that the Requested Documents were not relevant to the claims and defenses in the Oregon Class Action. Instead, CLAWA's about-face appears to stem from a concern that it might get sued. *See* Masuda Decl. Ex. 4. at 2 (stating that CLAWA's agreement to produce "Class Certification-Related Information" was "made without the knowledge that Deloitte was actively pursuing claims against other third-party investment advisers and would considering bringing the same or similar actions."). But CLAWA cites no authority for the proposition that fear of potential contribution claims is a valid reason to withhold relevant documents that are responsive to a duly-issued and served subpoena. The Requested Documents are relevant to the claims and defenses in the Oregon Class Action and must be produced.

### B.   CLAWA's Relevance Objection As To Requests 11-12 and 17-19 Is Meritless

CLAWA objects that Request Nos. 11-12 and 17-19—which seek CLAWA's compliance policies and procedures, due diligence performed on Aequitas, compensation received by CLAWA for selling Aequitas securities, and documents it produced to federal agencies including the SEC or FINRA—are not relevant to class certification. As explained above, these documents are relevant to both "seller liability" and "nonseller liability" under the Oregon Securities Law. For example, the due diligence CLAWA performed on the Aequitas investments is relevant to the bases upon which CLAWA made recommendations to its clients to invest in Aequitas. Similarly, documents concerning the information CLAWA obtained from Aequitas, CLAWA's compliance (or lack thereof) with its fiduciary obligations and regulatory requirements, and CLAWA's financial incentives to sell

Aequitas securities, are all necessary to understand fully the role that RIAs like CLAWA played in the sales at issue (as compared to Deloitte's alleged role). *See supra* Section IV.A.2. In addition, documents responsive to Request Nos. 11-12 and 17-19 are directly relevant to determining the differing levels of information received by members of the putative class—which impacts the class-certification analysis. *See New Jersey Carpenters II*, 272 F.R.D. at 169.

### C. CLAWA's Overbreadth Objection As To Requests 7-10, 12, And 15 Should Be Rejected

CLAWA objects to Request Nos. 7-10, 12, and 15 because they seek information regarding "CLAWA's clients who did not invest in Aequitas securities." Not so. Deloitte does not seek documents from CLAWA clients who did not invest in Aequitas. *See, e.g.*, RFP No. 7 (seeking communications "Relating to any Aequitas Security or Aequitas Entity"); RFP No. 12 (seeking documents relating to "due diligence of Your Clients' investments in any Aequitas Security or Aequitas Entity"). Deloitte's requests are narrowly tailored to discover documents germane to the Oregon Class Action. In an effort to compromise, Deloitte even proposed to limit CLAWA's search for responsive documents to a subset of twelve clients who invested in Aequitas, yet CLAWA rejected Deloitte's offer. As a result, it is disingenuous for CLAWA to argue now that Deloitte's requests are "unduly burdensome."

Deloitte now seeks CLAWA's full compliance with its Subpoena. This Court should order CLAWA to produce all non-privileged documents responsive to Request Nos. 2-19 for all of CLAWA's clients that invested in Aequitas.

## V. CLIFTONLARSONALLEN WEALTH ADVISORS' POSITION

### A. CLAWA Is A Non-Party To This Action And Has Already Produced Over 6,100 Pages Of Documents; Deloitte Has Failed To Meet Its Burden Under Rule 26

The standard set forth in Rule 26 applies to discovery requests issued pursuant to a subpoena under Rule 45. *See Amini Innovation Corp. v. McFerran*

1  *Home Furnishings, Inc.*, 300 F.R.D. 406, 409 (C.D. Cal. 2014) (quashing third-

2  party subpoena in light of "sheer breadth" of the topics).  As articulated above,

3  CLAWA has already engaged in the process of searching for, reviewing, and

4  producing over 6,100 pages of documents in response to the Subpoena, and its

5  counsel has met and conferred with Deloitte's counsel in good faith to attempt to

6  narrow the scope of the Subpoena.  Seymore Decl. Exhs. 6-7, 9.  These activities –

7  as well as CLAWA's efforts in now resisting Deloitte's motion to compel and

8  drafting the motion to transfer that Deloitte's intransigence is forcing CLAWA to

9  bring – represent a significant investment of time and money for any entity, let

10 alone one that is not, and according to Deloitte is not contemplated to be, a party to

11 the action.  As the Ninth Circuit has noted, "[n]onparty witnesses are powerless to

12 control the scope of litigation and discovery, and should not be forced to subsidize

13 an unreasonable share of the costs of a litigation to which they are not a party."

14 *United States v. Columbia Broad. Sys., Inc.*, 666 F.2d 364, 371 (9th Cir. 1982).

15      These facts alone demonstrate that CLAWA has already long since satisfied

16 its obligations commensurate with the Rule 26 "proportionality" standard given

17 CLAWA's lack of involvement in the case.  *See In re Allergan, Inc*, 2016 WL

18 5922717, at *2 (C.D. Cal. Sept. 23, 2016) (denying motion to compel production

19 of discovery from third party as unduly burdensome and because requests "fail[ed]

20 to demonstrate how . . . as written, [they were] proportional and reasonably

21 calculated to lead to the discovery of relevant information that [third-party] may

22 possess" and did not clarify how they would reveal information relevant to class

23 certification).

24      To the extent the Court determines to nevertheless address the details of

25 Deloitte's motion, Deloitte has not otherwise met its burden to demonstrate the

26 relevance and proportionality of the requests in the Subpoena to which it claims

27 CLAWA has not adequately responded.  "The party seeking to compel discovery

28 has the burden of establishing that its request satisfies the relevancy requirements

1   of Rule 26(b)(1)."  *Hsingching Hsu v. Puma Biotechnology, Inc.*, 2018 WL

2   4951918, at *4 (C.D. Cal. June 27, 2018) (quoting *Bryant v. Ochoa*, 2009 WL

3   1390794 at *1 (S.D. Cal. May 14, 2009)).  Furthermore, special consideration must

4   be given to the burden imposed on non-parties served with a subpoena.  *See*

5   Fed. R. Civ. P. 45(d)(3)(A)(iv) (requiring that a court quash a subpoena if it

6   imposes an undue burden upon the subpoena recipient); *Dart Industries Co., Inc. v.*

7   *Westwood Chemical Co.,* 649 F.2d 646 (9th Cir. 1980) ("While discovery is a

8   valuable right and should not be unnecessarily restricted, the 'necessary' restriction

9   may be broader when a non-party is the target of discovery.").

10       To assess undue burden, courts weigh the burden imposed on a subpoenaed

11   party against the value of the information sought to the serving party.  *Moon v.*

12   *SCP Pool Corp*., 232 F.R.D. 633, 637 (C.D. Cal. 2005) (citation omitted).  Finally,

13   "compelling a non-party to produce documents beyond the scope of allowable

14   discovery necessarily imposes an undue burden or expense."  *Rodriguez v. El Toro*

15   *Med. Inv'rs Ltd. P'ship*, 2017 WL 2495171, at *2 (C.D. Cal. May 11, 2017); *see*

16   *also Thunderbird v. Oregon*, 2010 WL 4483355, at *3 (D. Or. Oct. 12, 2010)

17   ("Obviously, if the sought-after documents are not relevant . . . then any burden

18   whatsoever imposed would be by definition undue.") (citation omitted).

19       As demonstrated below, Deloitte has failed to meet this burden.

20   **B.    Deloitte Is Improperly Seeking Merits-Based Discovery Irrelevant**

21   **to The Existing Claims in The Action And Prior To Class**
     **Certification**

22       **1.    The Oregon Court Wants to Avoid Merits-Related Rulings**

23   **in Discovery Motio ns And Has Been Keeping A Tight Rein**
     **On Discovery Generally Prior To Class Certification**

24       Deloitte's initial relevance argument does not address class certification

25   issues at all, instead discussing the merits of the underlying claims.  The Oregon

26   Court has previously articulated the risk of implicating merits issues in discovery

27   motions: "The court should avoid making merits rulings when deciding discovery

28   motions, which can be avoided here by limiting discovery's scope until the

1   pending motions are decided." *See* Seymore Decl. Ex. 1 (Dkt. No. 174, November

2   28, 2016 Opinion and Order on Deloitte's and EisnerAmper's Motions for

3   Protective Order).  While that order was issued while motions to dismiss were

4   pending, the plaintiffs in the underlying action have recently filed a motion to

5   strike another defendant's cross-complaints for contribution, and an opposition to

6   Deloitte's motion for leave to do the same.  *See* Dkt. Nos. 436-37.  The same logic

7   applies here, as to determine the relevance of the Subpoena's remaining requests,

8   the Court would necessarily have to opine on the relationship between a non-

9   party's actions and Deloitte's "non-seller" liability defenses – precisely the subject

10  of the contribution actions.  As to Deloitte's "seller" liability relevance argument,

11  that subject matter is relevant, if at all, to plaintiffs and Aequitas, not Deloitte.

12  Deloitte stretches mightily to connect CLAWA's information to "seller" liability –

13  the documents sought might "bear" on "what Aequitas told CLAWA about its

14  products and business, and in turn, what CLAWA told its customers about

15  Aequitas" – and if Aequitas is not liable, the argument continues, Deloitte cannot

16  be "'secondarily' liable."  The leaps required here from evidence sought to

17  Deloitte's interest are themselves the best evidence that any alleged relevance of

18  these documents – to say nothing of Deloitte's "need" for them – is far outweighed

19  by the disproportionate burden on CLAWA, particularly given its non-party

20  status.[5]

21          Furthermore, as evidenced by the Oregon Court's order just cited, Dkt.

22  No. 174, as well as more recent orders it has issued (*see, e.g.*, Seymore Decl. Ex. 4

23  (Dkt. No. 448, January 24, 2019 Order denying Sidley's Mot. to Compel)), it is

24  keeping a tight rein on the scope of discovery at this stage of the litigation, *i.e.*,

25  ─────────────

26  [5] Deloitte makes a similar stretch with the only authority it cites in this portion of its argument.  First, *TSC Industries v. Northway* was brought under the federal securities laws, not Oregon state securities law, and it is the latter statutes Deloitte

27  is relying on for its relevance arguments here.  *See* 426 U.S. 438, 449 (1976). Second, the standard articulated in *TSC Industries* was developed and being

28  applied in the context of a proxy statement – not secondary communications involving non-parties to the action.  *See id.*

1   prior to class certification.  *See also Henderson v. United Student Aid Funds, Inc.*

2   2015 WL 4742346, at *3 (S.D. Cal. Jul. 28, 2015) ("Discovery in a putative class

3   action at the pre-certification stage is generally limited to such certification issues

4   as the number of class members, the existence of common questions, typicality of

5   the claims, and the representative's ability to represent the class.").  Courts

6   frequently stay merits-based discovery *among parties* prior to class certification;

7   the fact that Deloitte is seeking merits-based discovery from a non-party is yet

8   another example of its overreach, and evidence of the disproportionate nature of

9   the remaining requests in the Subpoena.

10          2.   **Deloitte's Merits-Related Relevance Arguments Are**
               **Insufficient**

11

12          Even if the Court does decide to consider Deloitte's merits-based arguments

13   at this stage – though it should not – a review of the substance of those arguments

14   reveals that they too are insufficient.

15               a.    *Deloitte's Attempts to Connect CLAWA's Documents to*
                        *Its Own Potential Liability Stretch Far Beyond the*

16                      *Bounds of Relevance or Proportionality*

17          Deloitte implicitly and explicitly argues – for the first time, never having

18   raised it in any previous discussions with CLAWA when it was merely seeking

19   "class certification-related" information (*see generally* Seymore Decl. Ex. 9) –

20   based on the Oregon securities laws that CLAWA actively and directly participated

21   in the sales at issue and/or received compensation from Aequitas, which somehow

22   justifies further discovery from CLAWA.  *See, e.g.*, Section II.A, *supra* ("[t]his is

23   where CLAWA's documents come into play.  Plaintiffs allege that Aequitas **used a**

24   **network of RIAs to sell the various securities** at issue. . . .  Aequitas paid RIAs

25   to promote its securities and steer clients to invest.") (internal citation omitted)

26   (emphasis added).

27          Deloitte conflates CLAWA's role as an investment advisor to its clients, and

28   a non-discretionary one at that, with that of a "broker-dealer" or "seller" for

1   purposes of ORS 59.115.  The Oregon securities laws do not define a "seller," but

2   the District of Oregon has defined a "seller" thereunder to "only refer[] to persons

3   who pass title to securities."  *Newman v. Comprehensive Care Corp.*, 794 F. Supp.

4   1513, 1526 (D. Or. 1992).  Moreover, a "salesperson" is defined as "a person,

5   other than a broker-dealer, who represents or purports to represent a broker-dealer,

6   issuer or owner of securities in effecting or attempting to effect in any manner

7   securities transactions."  ORS 59.015(18).  In other words, an agent of the issuer, a

8   broker-dealer, or other person selling their securities.  Lastly, a federally-registered

9   investment adviser, such as CLAWA, is defined by Section 202(a)(11) of the

10   Investment Advisers Act of 1940 as "any person or firm that: for compensation, is

11   engaged in the business of providing advice to others or issuing reports or analyses

12   regarding securities."  In other words, it is *not* the same as a broker-dealer; it is not

13   selling securities or passing title to securities as a broker-dealer would as required

14   for "seller" status and liability under the Oregon Securities Laws.  Rather, it is

15   offering advice to its clients.

16        As Deloitte admits, CLAWA is a registered investment adviser (RIA).

17   Deloitte has made no showing whatsoever to support its naked assertion that

18   CLAWA, in addition to being an RIA to its own clients, was somehow and

19   simultaneously an agent for Aequitas, in other words a "seller" acting on its behalf.

20   Stripped of any statutory or factual basis for the assertion that CLAWA is

21   somehow a "seller" for Aequitas to its clients – it was not – Deloitte's additional

22   document requests are revealed to be nothing more than an attempt to try and re-

23   cast CLAWA as a seller.  Neither the Oregon securities laws nor the Investment

24   Advisers Act support this construction, and Deloitte should not be permitted to

25   embark on its fishing expedition with no legal or factual basis for arguing CLAWA

26   is a seller in order to do so.  At its most base level, Deloitte's *ipse dixit* logic that

27   discovery must be had from CLAWA is premised on the conclusion it is seeking

28   discovery to prove – namely that CLAWA was a "seller" for Aequitas.  Such

1    circular logic cannot form the basis of a legitimate claim of relevance, particularly

2    from a non-party.

3            b.      *The Oregon Court Has Repeatedly Rejected Deloitte's*

4                    *Arguments That Reliance Is An Element Of The Oregon*
                     *Securities Laws At Issue, Such That Deloitte's Proposed*

5                    *Discovery Concerning What CLAWA Investors Received*
                     *And Relied Upon Is Improper To Any Issue Or Defense*

6                    *In The Case, Let Alone Class Certification*

7            Second, the Oregon Court has twice held, in denying Deloitte's and other

8    defendants' motions to dismiss in the case, that the relevant Oregon statute (ORS

9    § 59.115(1)(b)) does not have a reliance requirement.  *See* Seymore Decl. Exs. 2

10   (Dkt. No. 242, pp. 18-19), and 3 (Dkt. No. 340, pp. 7-8.).  The instant motion to

11   compel is simply another effort by Deloitte to read a reliance requirement into the

12   statute: according to Deloitte's arguments above, it is seeking further information

13   requested in the Subpoena to learn "what CLAWA told its customers about

14   Aequitas" and "*why* CLAWA's clients ultimately invested in Aequitas."  These

15   concepts are proxies for reliance, which is irrelevant.  *See Basic Inc. v. Levinson*,

16   485 U.S. 224, 243 (1988) ("the proxy solicitation itself, rather than the defect in

17   the solicitation materials," was the essential link in the transaction).  Furthermore,

18   in its August 1, 2018 order, the Oregon Court described the misrepresentations

19   alleged in Plaintiffs' Second Amended Complaint, and none involved CLAWA.

20   *See* Seymore Decl. Ex. 3 (Dkt. No. 340, p. 9) (finding that "Plaintiffs have

21   identified various PPMs and investment documentation," and reciting in detail all

22   of the documents identified in the SAC, none of which references CLAWA).  Once

23   again, the attenuated, if not nonexistent, connection between the relevant claims

24   and the information sought demonstrates a clearly disproportionate imbalance

25   between burden and value, if not outright irrelevance (which, as noted, is by

26   definition an undue burden).

27            c.      *The Documents CLAWA Has Already Produced*

28                    *Precluded CLAWA Investors From Relying Upon Any*
                      *CLAWA Communications In Making Their Investment*

*Decisions in Any Event*

Third, the documents CLAWA has already produced to Deloitte confirm that the terms of the investment as subscribed to by each of CLAWA's clients who invested in Aequitas preclude reliance upon any other communications outside the offering documents (*i.e.,* the CPPMs and Subscription Agreements), which in effect renders the information Deloitte seeks *per se* irrelevant for this additional reason.  In pertinent part, the subscription agreement contained the following no-reliance clause:

> **Representations, Warranties and Acknowledgements**. As an inducement to the Partnership to accept this Subscription Agreement, the subscriber hereby agrees, represents, warrants and acknowledges to the Administrator, the General Partner and the Partnership as follows:
>
> . . .
>
> (h) The Subscriber is investing in the Partnership solely on the basis of the Partnership Documents [defined in the Subscription Agreement as the CPPM, its supplements, Amended and Restated Limited Partnership Agreement of the Partnership, and the Subscription Agreement itself], irrespective of any other information which the Subscriber may have received from the Partnership or any Sponsor Party [defined in CPPM as the General Partner and Aequitas Investment Management, LLC]. The Subscriber understands that it may not rely upon, and affirms that in deciding to invest in the Partnership, it has not relied upon, any representations or other information (whether oral or written), including, without limitation, any forecast, exhibit, or any other marketing or analytical materials provided by the Partnership, any Sponsor Party, any of their respective employees or affiliates other than as set forth in the Partnership Documents. The Subscriber acknowledges that any such materials that may have been provided by a Sponsor Party, including without limitation through an electronic data room, for potential investors in the Partnership, were provided based solely in reliance on the Subscriber's representations to the Sponsor Parties that the Investor has the knowledge, sophistication and experience in financial and business matters such that the Subscriber is capable, either alone or with the advice of its own

JOINT STIPULATION RE DELOITTE & TOUCHE LLP'S MOTION TO COMPEL

1
2
3
4
5

> financial, legal and tax advisors, of evaluating the merits
> and risks of an investment in the Partnership, and the
> Sponsor Parties and their respective affiliates, directors,
> officers, employees, advisors and other representatives
> make no representation as to the accuracy or
> completeness of any such information or as to its
> sufficiency or suitability for the Subscriber's purposes.

6  Seymore Decl., ¶ 9.

7    Courts have recognized that where, as here, an investor has executed a no-

8  reliance clause precluding reliance upon outside documents, representations, and

9  communications, that investor is precluded from relying upon additional outside

10 representations in making his or her investment decisions.  *Paracor Finance, Inc.*

11 *v. General Electric Capital Corp.*, 96 F.3d 1151, 1155, 1159-60 (9th Cir. 1996)

12 (affirming grant of summary judgment on federal securities claims against

13 claimants under section 10(b) and Rule 10b-5, and dismissal of Oregon Securities

14 Law claims under ORS § 59.115, including in part because of non-reliance clause,

15 such that investors "failed to introduce an issue of material fact that they justifiably

16 relied on GE Capital" because of language in purchase agreement that investors

17 "made [their] own investment decision with respect to the purchase of the

18 Debentures . . . without relying on any other person."); *FMC Techs., Inc. v.*

19 *Edwards*, 2007 WL 1725098, at *2 (W.D. Wash. June 12, 2007), *aff'd*, 302 F.

20 App'x 577 (9th Cir. 2008) (finding plain language of no-reliance clause barred

21 fraud claims, because in the Ninth Circuit "no-reliance clauses have been held to

22 prevent reliance as a matter of law"); *Calliari v. Sargento Foods, Inc.*, 2009 WL

23 3784345, at *5 (W.D. Wash. Nov. 10, 2009), *aff'd*, 442 F. App'x 266 (9th Cir.

24 2011) ("The plain language of the no reliance clause precludes the

25 misrepresentation and estoppel claims.").

26   As in *Paracor*, the Subscription Agreements that CLAWA has produced for

27 those of its clients who invested in Aequitas contain a similar non-reliance clause,

28 quoted in full above, which states that the "Investor has the knowledge,

sophistication and experience in financial and business matters such that the Subscriber is capable, either alone or with the advice of its own financial, legal and tax advisors, of evaluating the merits and risks of an investment in the Partnership" and that the Subscriber "affirms that in deciding to invest in the Partnership, it has not relied upon[] any representations or other information . . . other than as set forth in the Partnership Documents." *See* Seymore Decl., ¶ 9.

> d.   *Deloitte's Recent Confession That It Seeks Merits Discovery To Be Used For Purposes Including Possible Contribution Claims Against CLAWA Underscores Its Bad-Faith Negotiation Throughout The Subpoena Process And That It Does Not Have Adequate Grounds Proportional To The Needs Of The Case To Compel Compliance With The Remainder Of Its Requests*

While Deloitte now attempts to downplay that it "currently has no basis for asserting a contribution claim against CLA," when confronted with the recent contribution action in a meet and confer in January 2019, Deloitte indicated that it may as yet do so and would make no promises that the discovery produced by CLAWA would not be used for this purpose in addition to using it for class certification purposes. *See* Seymore Decl. Ex. 9, p. 2. To be clear, CLAWA is not arguing – despite Deloitte's argument to the contrary – that its concern regarding a future claim that could be brought against it is, standing alone, a sufficient basis on which to resist compliance with the remainder of the Subpoena requests. What is clear, however, is that (i) CLAWA is not a party to this action; (ii) no party has filed any document with the Oregon Court indicating that it will be attempting to add CLAWA to the action; (iii) Deloitte has sought leave to file complaints for contribution against other RIAs; and (iv) the existing claims in the SAC do not implicate statements made or not made, or actions taken or not taken, by CLAWA. Given all of these facts, Deloitte simply has no adequate grounds proportional to the actual needs of the case on which to compel compliance with the remainder of its requests. To the extent Deloitte may be searching for evidence to support a

1   future contribution claim, such an intent is improper: "District courts need not

2   condone the use of discovery to engage in 'fishing expedition[s].'"  *Rivera v.*

3   *NIBCO, Inc.*, 364 F.3d 1057, 1072 (9th Cir. 2004); *Hofer v. Mack Trucks, Inc.,* 981

4   F.2d 377, 380 (8th Cir. 1992) (the broad construction of relevancy "should not be

5   misapplied so as to allow fishing expeditions in discovery").[6]

6         In sum, the non-class-related grounds Deloitte has offered as justification for

7   its motion fall far short of the requirements of Rules 26 and 45, particularly as

8   applied to a non-party.

9         **C.**    **Deloitte's Relevance Arguments Based on Class Certification Issues Also Fail**

10

11         Just as Deloitte's arguments attempting to justify the Subpoena's relevance

12   on merits grounds fail, so too do its arguments focused on the Subpoena's alleged

13   relevance to class certification.  Any claimed relevance or need is in fact *de*

14   *minimis*, and not proportional to the demands being made of CLAWA.

15         Deloitte's arguments focus on a single prong of the class certification

16   analysis pursuant to Rule 23(b)(3): whether common questions of law or fact

17   predominate over individualized inquiries.  The Supreme Court has held that when

18   "one or more of the central issues in the action are common to the class and can be

19   said to predominate, the action may be considered proper under Rule 23(b)(3) even

20   though other important matters will have to be tried separately. . . ."  *Tyson Foods,*

21   *Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 1045 (2016) (citation omitted).  This standard

22   is easily met in securities fraud cases: "Predominance is a test readily met in

23   certain cases alleging consumer or securities fraud or violations of the antitrust

24   laws."  *Amchem Prod., Inc. v. Windsor*, 521 U.S. 591, 625 (1997).  This is because

25   "most securities cases challenge statements made in filings with the SEC or other

26

27   [6] Plaintiffs have also set forth multiple reasons why the *existing* contribution claims are improper at this stage of the litigation, including judicial inefficiency, unnecessary prejudice to the plaintiffs, and failure to yet accrue.  *See* Dkt. No. 436 (Plaintiffs' Motion to Strike Sidley's Third-Party Claims); Dkt. No. 437 (Plaintiffs' Opposition to Deloitte's Motion for Leave to File Third-Party Complaint).

28

1  public documents, with each class member receiving the same information (or

2  misinformation)."  7 Newberg on Class Actions § 22:81 (5th ed.).  The same

3  treatise notes that "it is only the extraordinarily rare securities class action

4  involving oral, non-scripted misrepresentations in which the nature of the

5  misrepresentations or omissions themselves may present an individualized

6  question that fails the predominance test."  *Id.*

7      Here, the existing allegations of the SAC – focused, at least as to Deloitte,

8  on Aequitas' financial statements, PPMs, and SEC disclosures (*see* Masuda Decl.

9  Ex. 1 (Dkt. 257, ¶ 190) – readily satisfy this standard.  Any minor details regarding

10  what may or may not have been separately communicated by CLAWA to the very

11  small percentage of putative class members it served – which, it should be noted,

12  appear nowhere in the SAC – could not possibly overcome the obvious existing

13  common questions of both law and fact based on the "filings with the SEC or other

14  public documents" referenced in the SAC.  The additional documentation sought

15  from CLAWA pursuant to the Subpoena is therefore irrelevant to class

16  certification, or at most, so marginally relevant in the overall context of the case

17  that it does not meet Rule 26's proportionality standard.

18      This inescapable conclusion is further evidenced by the fact that Deloitte

19  could find no authority from the 9th Circuit or California district courts to support

20  its position.  The only case it does reference from within the 9th Circuit, *Galbraith*

21  *v. MML Inv'r Servs., Inc.* from the District of Oregon, does not in fact contain the

22  quote Deloitte cites in its parenthetical, was not a class action, and in fact resulted

23  in a grant of a motion to dismiss because of a *failure* to find secondary liability

24  under ORS 59.115(3).  2009 WL 4955617 (D. Or. Dec. 11, 2009).  Rather, case

25  law in the 9th Circuit reveals that even in actions where the alleged

26  misrepresentations are primarily oral – that is, claims *without* the voluminous

27  documents common to the class the plaintiffs are explicitly relying on here –

28  variance in those communications is not necessarily sufficient for a lack of finding

1  of predominance.  *See Joint Equity Comm. of Inv'rs of Real Estate Partners, Inc. v.*

2  *Coldwell Banker Real Estate Corp.*, 281 F.R.D. 422, 430 (C.D. Cal. 2012)

3  (granting class certification) (citing *In re First Alliance Mortg. Co.*, 471 F.3d 977,

4  991 (9th Cir. 2006)); *see also Cameron v. E. M. Adams & Co.*, 547 F.2d 473, 477

5  (9th Cir. 1976) ("differences in the members' acquisition of, and reliance on,

6  existing information" did not interfere with the predominance of the common

7  question).

8        The remaining documents sought by Deloitte are thus not relevant to class

9  certification either, just as they are not relevant to the underlying merits, and

10  therefore necessarily represent an undue burden on CLAWA.  Deloitte's motion

11  should be denied.

12        **D.  Deloitte's Requests for Internal Documentation, Including**
             **Policies and Procedures And Diligence, Are Similarly Improper**
13

14        All or portions of Subpoena Request Nos. 6, 12, and 15-16 seek, among

15  other categories of information, documents reflecting CLAWA's internal diligence

16  regarding Aequitas.  Seymore Decl. Ex. 5.  Notably, these requests are in addition

17  to other requests seeking communications between CLAWA and its clients about

18  Aequitas.  *Id.* (Requests No. 9).  Deloitte claims that "these documents are relevant

19  to both 'seller liability' and 'nonseller liability' under the Oregon Securities Law."

20  This argument was largely addressed above in Section V.A, and has even less

21  strength here, because Deloitte makes no attempt to explain how documents that

22  were never communicated or sent to customers are relevant to *any* liability beyond

23  the weak statement that such documents "are all necessary to understand fully the

24  role that RIAs like CLAWA played in the sales at issue."  Further, as stated by

25  Deloitte in Section II.A above, the outstanding requests in the Subpoena are

26  designed to explore RIAs' role as a supposed "seller" to members of the putative

27  class and representations made to them.  *See* Section II.A, *supra* ("This is where

28  CLAWA's documents come into play.  Plaintiffs allege that Aequitas used a

network of RIAs to sell the various securities at issue."). Wholly internal documents have no relevance to any such alleged representations made by CLAWA to putative class members. Such a generalized and conclusory claim of relevance is not remotely enough to meet Deloitte's burden here.

### E. Deloitte's Defense Of Requests 7-10, 12, And 15 Is An Acknowledgment Of Their Overbreadth

In response to certain of CLAWA's objections to Request Nos. 7-10, 12, and 15, Deloitte has clarified above, *see* Section IV.C, that it is not seeking documents from CLAWA clients who did not invest in Aequitas. CLAWA appreciates the clarification. However, Deloitte then goes on to explain that as part of the meet and confer process, it "proposed to limit CLAWA's search for responsive documents to a subset of twelve clients who invested in Aequitas." Not only did this "subset" encompass almost half of CLAWA's clients who invested in Aequitas, but it appears to be an all-but-implicit acknowledgment that the original requests were indeed overbroad and did not represent a real "need" on the part of Deloitte, as required by Rules 26 and 45 in the non-party context. It is all the more troubling, then, that "Deloitte now seeks CLAWA's full compliance with its Subpoena" despite its acknowledged overbreadth.

The burdens on CLAWA to further respond to those of the Subpoena requests to which it has objected are far from insubstantial. *See* Seymore Decl., ¶ 13. CLAWA's assessment of the disruptions to its business operations include lost employee hours across multiple work weeks to identify, collect, review, and export potentially relevant documents, impact on its IT and other systems in connection with these searches and collection and export processes, and the attendant financial costs including, the cost to utilize an ESI vendor for purpose of processing, hosting, and producing potentially responsive ESI. *Id.* Such burdens existed at the time Deloitte proposed to limit its request to a "subset" of CLAWA's clients who invested, and, are now amplified in light of Deloitte's pursuit of full

1  compliance with (as emphasized above), an overly-broad third-party subpoena

2  bearing no connection to the issues in the underlying litigation.

3      For these reasons as well, Deloitte's motion should be denied.

4  **VI.    CONCLUSION**

5      For the foregoing reasons, Deloitte respectfully requests that the Court grant

6  its Motion and order CLAWA to comply with the Subpoena.

7      For the foregoing reasons, and to the extent the Court does not grant

8  CLAWA's request to transfer this matter to the District of Oregon, CLAWA

9  respectfully requests that the Court deny the relief requested by Deloitte.

10

11

12  Dated: March 14, 2019                LATHAM & WATKINS LLP

13

14                                       By: */s/ Peter A. Wald*
                                         Peter A. Wald
15                                       *Attorneys for Defendant*
                                         *Deloitte & Touche LLP*
16

17  Dated: March 14, 2019                FAEGRE BAKER DANIELS LLP

18                                       By: */s/ Michael Jaeger*

19
                                         Michael Jaeger
20                                       *Attorneys for CliftonLarsonAllen*
                                         *Wealth Advisors, LLC*
21

22

23

24

25

26

27

28

1

## <u>ECF ATTESTATION</u>

2       In compliance with Local Rule 5-4.3.4(a)(2)(i), I hereby attest that

3   concurrence in the filing of this document was obtained from all parties whose

4   electronic signatures appear above.

5

6   Dated:  March 14, 2019                     LATHAM & WATKINS LLP

7

8                                              By: */s/ Peter A. Wald*
                                                   Peter A. Wald
9                                              *Attorneys for Defendant*
                                               *Deloitte & Touche LLP*

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28